WILLIAM H. OLER *vs.* THE BALTIMORE AND RAN-
DALLSTOWN RAILROAD, use of GEORGE N. MOALE,
and JAMES S. HAGGERTY, Trustees.

*Act of 1868, ch. 471, (General Corporation Act.)—Act of 1870,
ch. 476—Certificate to Articles of Incorporation—Subscriptions
to Stock.*

The certificate of incorporation of the B. & R. Railroad recited that certain
persons had associated "for the purpose of constructing a horse railroad in
accordance with the provisions of the Act of 1870, ch. 476," entitled "An
Act to provide for the creation and regulation of incorporated companies in
the State of Maryland." The termini of said road were to be "the City of
Baltimore and the village of R.; the whole route of said road passed
through Baltimore County, the Baltimore terminus being within the City."
The certificate was acknowledged before a justice in Baltimore City and
certified by a Judge of the Supreme Bench of that City. HELD:

1st. That the provisions of the Act are not restricted to steam railways, and
that this horse railway could be legally incorporated under it.

2nd. That this certificate of incorporation could be attested by the proper
officers either in the City or the County.

The subscription book of a railroad incorporated as the "B. & R. Railroad"
was headed as follows: "B. & R. Railroad. We the undersigned, whose
names are hereto affixed, do hereby agree to subscribe to the amount of
stock set opposite to our names in the capital stock of the B. & R. *Horse*
Railroad, &c." HELD:

That the introduction of the additional word in the name could not mislead a
subscriber, and that the subscription would have been valid, even if the
true name had been omitted from the commencement of the heading.

The General Corporation Act (1868, ch. 471,) only makes provision for the
construction of railways ouside the limits of the City of Baltimore.

The authority of a judge to certify to the formality of articles of incorpora-
tion, under the laws of this State, is a question of jurisdiction, and as such,
is a proper subject of inquiry by the Courts when the legal existence of the
corporation is in issue.

In an action by a corporation to recover a subscription to its stock, the fact of its having taken subscriptions in addition to its authorized stock, does not of itself bar its right to recover. If it has retained a sufficient amount of its authorized stock which it is ready and able to issue to the subscriber to such stock when he performs his part of the contract, it may recover against him. But there can be no recovery against a subscriber to the additional unauthorized stock.

APPEAL from the Superior Court of Baltimore City.

The facts are stated in the opinion of the Court.

The first and second exceptions are sufficiently set forth in the opinion of the Court. The third exception was as follows: (the third and sixth prayers of the defendant, which were waived, being omitted.) After the offer of the book in the second bill of exceptions, the plaintiff proved by Fielder C. Slingluff, that he is the president of the plaintiff; that the defendant, Oler, subscribed for sixty shares of its stock, amounting to three thousand dollars; defendant took the book from witness, and returned it with the subscription, which he recognized as his, and promised to pay; did not see the defendant sign the subscription book, but from his knowledge of the handwriting of Oler, obtained from having seen signatures to other notes, which were admitted by Oler to be in his genuine handwriting, he believes the signature to the subscription book to be the genuine signature of William H. Oler, and that the said subscription had been admitted by Oler to the witness to be his, Oler's signature; that the defendant had given to the plaintiff his promissory note for $600, in part payment of his subscription, upon which judgment had been recovered, and is still unpaid, and he still owed, on account of said stock, the sum of twenty-four hundred dollars, which he never objected to pay; that subscriptions were received for stock, to amount of about $48,000, though the company was only authorized by its charter to

issue stock to amount of $40,000 ; that calls were made for the instalments of stock by the directors, and demand for payment made upon them.

The defendant, then, to maintain the issue on his part, offered in evidence by George N. Moale, that he is at this time the secretary of the plaintiff, and has been secretary since its organization ; that the capital stock of the plaintiff paid in, amounts to $44,000 ; has not given certificates of stock to all the parties who have paid for stock, though they are entitled to such certificates.

On cross-examination by plaintiff, witness said, that of the subscriptions upon the book, Oler's subscription was included among the first forty thousand dollars of stock subscribed for ; and of the first $40,000, but $36,000 had been paid ; that $8,000 additional to the $36,000 had been collected from the subscriptions to stock over the $40,000, and made subsequent to Oler's subscription.

The testimony was then closed, and the plaintiff offered the following prayer :

If the jury find from the evidence, that the subscription of Oler is necessary to make up the amount of $40,000 capital stock, as limited by the charter, the plaintiff is entitled to recover, although they shall further find that $8,000 has been collected from subscriptions made after the said sum of $40,000 had been subscribed.

And the defendant submitted six prayers :

1. That there is no sufficient proof in this case that the plaintiff is properly incorporated under the Act of 1870, ch. 476, and the plaintiff is not therefore entitled to recover.

2. That there is no proof that five dollars per share on such shares of stock was paid by the defendant at the time of making the subscription, as offered in evidence by the witness, Mr. Slingluff, and therefore the plaintiff is not entitled to recover.

4. That if the jury shall believe from the evidence that subscriptions to its capital stock were received by the

plaintiff, to an amount exceeding its capital stock, as fixed by the certificate offered in evidence in this cause, by the sum of eight thousand dollars, then the defendant is discharged from the alleged subscription so made by him, and the plaintiff is not entitled to recover.

5. If the jury believe from the evidence that the plaintiff in this case has sold its stock, to an amount exceeding the amount of its capital stock, as fixed by its certificate of incorporation offered in evidence in this cause, to wit: forty thousand dollars, and that the whole amount of capital stock, as fixed by said certificate has been actually paid to it, then the plaintiff cannot recover in this case.

The Court granted the plaintiff's prayer and rejected those of the defendant. The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER, ALVEY and ROBINSON, J.

*J. Thomas Scharf* and *Samuel Snowden*, for the appellant.

Even if the subscription was binding upon Oler at the time it was made, the taking by the corporation of subscriptions for more stock than it was authorized by its certificate of incorporation to issue, and the receipt by it from the subscribers of the payment in full for $4,000 more stock than it could lawfully issue, disabled it from performing the contract which it had made with Oler for the delivery to him of sixty shares of its capital stock, and operated as a rescission and cancellation of the contract. *S. & S. Plank Road Co. vs. Thatcher*, 11 *N. Y.*, 102 ; *Lake Ontario R. R. vs. Mason*, 16 *N. Y.*, 451 ; *McCord vs. O. & M. R. R Co.*, 13 *Ind.*, 223.

As the appellee, by its own act, deprived itself of the ability to give Oler a valid certificate of stock, even upon the payment of the money by him, there is a total failure

of consideration for the subscription, and therefore the corporation cannot recover. For if Oler had first paid the money and afterwards discovered that the corporation had no stock for which it could deliver to him a valid certificate, he could, upon well settled principles of law, have recovered back the money in an action for money had and received. *Chitty on Con.*, (11 *Ed.*,) 921, *note Y, and cases there cited; Benjamin on Sales*, (2 *Ed.*,) 332; *Griggs vs. Austin*, 3 *Pick.*, 22; *Sothoron vs. Weems*, 3 *G. & J.*, 441.

The fact that Oler's name appeared on the subscription book within the amounts necessary to make up the $40,000, could make no difference, for if the corporation afterwards sold other stock, it thereby virtually took back and forfeited the stock for which he had subscribed, and having done so could not sue Oler for the price. *Small vs. Herkimer Man. Co.*, 2 *N. Y.*, 330.

And as Oler had not paid the $5 per share at the time of subscription, or had not complied with the calls for instalments, he had no claim upon the appellee for the stock, and the appellee treated the contract as rescinded and cancelled by taking other subscriptions for it. *Busey vs. Hooper*, 35 *Md.*, 15.

*Fielder C. Slingluff*, for the appellee.

The Act of 1870 does not require an instalment of $5 per share to be *paid* at the time of making the subscription.

But if the 6th section is to be interpreted to mean that the $5 per share is to be paid at the time of making the subscription, can the appellant subscribe, refuse to pay, and then ask a Court of Law to release him from his contract, because he refuses to comply with its terms? It would be an easy way to avoid obligations of every kind if such a rule were laid down. *Vicksburg R. R. vs. McKean*, 12 *La. Annl.*, 638; *Hagerstown Turnpike Co. vs. Creeger*, 5 *H. & J.*, 124; *Mitchell vs. Rome R. R. Co.*, 17 *Ga.*, 574; *Commonwealth vs. Westchester R. R. Co.*, 3 *Grant*, 200;

*Wight vs. Shelby R. R. Co.*, 16 *B. Monr.*, 4; *Piscataqua Ferry Co. vs. Jones*, 39 *N. H.*, 491.

The capital stock of the appellee was limited by its charter to $40,000. The appellant was one of the subscribers to this $40,000 capital stock. He is entitled to his stock on payment of the money therefor. If the company has sold more stock than the $40,000, it has acted *ultra vires*, and such sale is void. It cannot go beyond the terms of its charter, and the appellee can suffer no harm thereby. He being one of the subscribers to the stock which the charter authorized, can maintain suit against the company for the same. "The invalidity or irregularity of one subscription to the stock of a corporation does not affect the validity of an organization so as to entitle another subscriber to refuse to pay his own regular subscription." *Litchfield Bank vs. Church*, 29 *Conn.*, 137.

BRENT, J., delivered the opinion of the Court.

This is an action of assumpsit brought by the appellee to recover a subscription to its stock, to which the appellant has pleaded non-assumpsit.

The first exception is taken to the admissibility of the certificate of incorporation of the appellee, as the Baltimore and Randallstown Railroad, offered in evidence, which the appellant insists ought not to have been admitted by the Court below. This certificate of incorporation recites, that certain persons have associated together for the purpose of constructing a horse railroad in accordance with the *provisions of the Act of* 1870, *ch.* 476, "the termini of said road to be the city of Baltimore and the village of Randallstown; the whole route of said road passing through Baltimore County, the Baltimore terminus being *within* the City of Baltimore." It is claimed that the purpose of this Association is not embraced by the Act of 1870, and that the persons who had associated together to form this company, could only become a body

corporate under the "Corporation Act" of 1868. It is very manifest, that they could not become a corporation under the last mentioned Act. That Act only makes provision for the construction of railways *outside* the limits of the city of Baltimore. The railroad contemplated in this case was to pass through Baltimore county, and run *within* the limits of the city, where there was to be one of its termini. A certificate of incorporation under the Act of 1868 would therefore have been of no avail, and could have conferred no corporate rights upon those obtaining it. But it is said on the part of the appellant, that they could not legally obtain an existence as a corporation under the Act of 1870, because the railroads referred to in the provisions of that Act, are roads similar to those alone upon which steam is at present used as the motive power. We do not see why so limited a construction should be put upon this law. It would be against both its spirit and letter. The term railroad is used without qualification or restriction, and we have found nowhere, either in the preamble or body of the law, any allusion to the motive power used as limiting its ordinary meaning or making a distinctive class. It is very true that many of the special requirements, contained in the law, are applicable only to railroads of the character of those upon which steam is now used. Had they not been made parts of the law, it might have furnished an argument that would not have been without weight, that such roads were intended to be excluded from its operation, but we do not understand that their being in the law can furnish any sound reason for the exclusion of other classes of railroads, when the language of its general provisions, as is the case with the law before us, is broad enough to embrace them.

The other objection to the certificate is, that it is acknowledged before a justice of the peace in Baltimore city, and certified to by a Judge of the Supreme Bench of that city, when the acknowledgment and certificate could

only have been attested by a Justice and Judge for Baltimore county. This objection has for its foundation the statement in the articles of association as follows: "the whole route of said road passing through Baltimore county." We will here say, as the point has been made in argument, and is properly before us, that we do not concur with the counsel for the appellee, that the certificate of a Judge, to articles of incorporation under the corporation laws of this State, is final and cannot be inquired into. His authority to sign the required certificate is a question of jurisdiction, and as such, is a proper subject of inquiry by the Courts, when the legal existence of the corporation is put in issue before them. Whether the mere form of proceedings, taken to create a corporation, is open after the Judge has certified that they *are formal*, is not involved in this case, and we must be understood as expressing no opinion about it. But we do not think there has been an improper exercise of jurisdiction by the Justice and Judge, who have attested this certificate of incorporation. To ascertain the route of the road it is not sufficient to look at a part of the articles of association, but it is to be ascertained from the whole. We not only find them containing what we have quoted above, but it is also stated in them that one of the termini of the road is to be "*within* the city of Baltimore." This cannot be, unless the road in its route passes through some portion of the city, as well as through Baltimore county. A part of it, therefore, being designed to be located in the city, the certificate of incorporation could be attested by the proper officers in that city as well as it might have been done by the proper officers in the county.

The next exception is to the ruling of the Court in permitting the subscription book to be read in evidence to the jury. The objection to it is, that it purports to be a subscription to the stock of the Baltimore and Randallstown *Horse Railroad*, while the corporate name is the *Balti-*

*more and Randallstown Railroad.* The subscription list is headed as follows :

"Baltimore and Randallstown Railroad; .

We the undersigned, whose names are hereto affixed, do hereby agree to subscribe to the amount of stock set opposite to our names in the capital stock of the Baltimore and Randallstown Horse Railroad, to run, &c."

This certainly is such a description of the corporation as enabled the subscribers to know and understand the exact corporation, to the stock of which they were subscribing, and this is all that the law requires. The true corporate name is given at the commencement of the heading to the list, and the introduction of the additional word in the name, where it afterwards appears, could not mislead, but rather tended to a fuller and more certain description of the corporation by explaining to some extent at least, its character and purpose. It is a much stronger case than the one in 5 *H. & J.*, 123, which was also an action to recover upon a subscription list, and in which it was attempted to avoid responsibility upon the ground that the true title of the corporation had not been given. The principle decided in that case would make the present subscription list a valid one, with no other name upon it, designating this corporation, except the one objected to. It is there said in the opinion of the Court, "if there is enough in the expressions used to describe the corporation intended, it will effectuate the contract." That there is enough used in the expressions to describe this corporation cannot admit of a doubt. We think the objection is without weight, and that the proof was properly admitted.

The prayer of the plaintiff, which was granted, and the fourth and fifth prayers of the defendant, which were refused, present the same question. The capital stock of this company is limited to forty thousand dollars, but it appears they have obtained a further subscription to the

amount of eight thousand dollars in excess of that sum. This the appellant claims releases him from liability upon his subscription. Whether it does or not depends upon the facts in the case. If the appellee has not the ability to give the appellant a valid certificate of stock upon the payment of the money subscribed by him, there is a failure of consideration on their part, and all the authorities agree there can be no recovery. The fact, however, of taking additional subscriptions does not of itself render the company unable to comply with its part of the contract, or excuse a subscriber in refusing for that reason to pay his own regular subscription. If all the authorized stock has not been signed, and the corporation has retained a sufficient amount, which it is ready and able to issue to the subscriber when he performs his part of the contract, he cannot reasonably complain. *Litchfield Bank vs. Church,* 29 *Conn.,* 137 ; *Smith, et al. vs. North American Mining Co.,* 1 *Nevada,* 430. If the present appellant was a subscriber for the additional unauthorized stock, there could be no recovery against him, and he would clearly be within the principle decided in the case of *McCord vs. The Ohio & Mississippi R. R. Co.,* 13 *Ind.,* 221, so strongly relied upon. But such is not the fact. He is one of the earliest subscribers to the original stock of forty thousand dollars, and the testimony shows there are four thousand dollars, or eighty shares of that stock not issued—being twenty shares more than the number subscribed for by him. The appellee is then in a condition to give him a valid certificate of stock upon the payment of the money by him, and being able to do this the company is entitled to recover in this action. The Court was therefore right in giving an instruction to this effect, and refusing those asked for by the appellant containing the opposite view.

The first prayer of the appellant is in reference to the sufficiency of the certificate of incorporation, and has been disposed of by what has been said in considering the first

exception. The second prayer is upon the theory, that the appellee was not entitled to recover except upon proof of the payment of five dollars upon each share by the appellant at the time of his subscription, and the case of *Taggart vs. Western Md. R. R. Co.*, 24 *Md.*, 583, is relied upon in support of it. That case is different from the present one. There the Act of incorporation required one dollar to be *paid* by the subscriber at the time of making his subscription to the stock, while in this case the Act directs that five dollars on each share shall be *payable* at that time. *Act* 1870, *sec.* 6. Thus by the very terms of the latter Act the validity of the subscription is not made to depend upon the actual payment at the time of a sum certain upon each share, as in the case of *Taggart vs. Western Md. R. R.*, but its meaning, and effect is to fix the time when such sum *becomes due and collectible.* The third and sixth prayers, presenting questions of proof as to demand and notice, have been waived, as they are in direct conflict with the evidence in the case.

The rulings of the Court below being without error, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 5th March, 1875.)