<hr />

# SUPERIOR COURT OF BALTIMORE CITY.

Filed June 13, 1903.

THE WESTERN MARYLAND TIDEWATER RAILROAD COMPANY

VS.

JOHN C. LEONARD, DANIEL A. LEONARD AND LORETTO V. LEONARD, TRUSTEES UNDER THE WILL OF DAVID LEONARD, DECEASED.

*McComas, Gaither & Greenbaum* for plaintiff.

*Edgar H. Gans* and *Wm. P. Lyon* for defendants.

HARLAN and DOBLER, JJ.—

The Western Maryland Tidewater Railroad Company is a railroad company incorporated in December, 1883, under the provisions of the Act of 1876, Chapter 242. The seven incorporators signed, sealed the certificate, and acknowledged it before a justice of the peace of Baltimore county. The clerk of the Circuit Court for Baltimore county, and Judge Fowler, as judge of the Circuit Court for Baltimore county, made, respectively, the certificates required by law, and the certificate was recorded in the office of the Secretary of State on December 17th 1883.

The second section of the certificate described the road as follows: The termini of the road of said company will be Howardville Station on the Western Maryland Railroad, in Baltimore county and Baltimore city. The said road will pass through Baltimore county. Beginning at Howardville, it will proceed thence down and along the Powder Mill Branch to Gwynn's Falls, thence along the valley of Gwynn's Falls through Wetheredsville to the city of Baltimore, striking the limits of said city upon the south side of the Middle River Branch of Gwynn's Falls.

The Western Maryland Tidewater Railroad Company, alleging that it could not agree with Ellen Leonard, John C. Leonard and Daniel A. Leonard, trustees of the estate of David Leonard, deceased, for the purchase and use and occupation of a certain described tract of land owned by them, wanted for the construction of its railroad, and situate in Baltimore city, made application to Wilmer Emory, a justice of the peace of Baltimore city, to issue his warrant to the Sheriff of Baltimore city, directing him to summon a jury of twenty inhabitants of Baltimore City to value the damages which the said owners of said tract will sustain by the use and occupation of said land, according to the provisions of Article 23 of the Code, and the amendments thereto. The tract of land sought to be condemned is in Baltimore city, on the west side of Gwynn's Falls, south of Edmondson avenue, being on the route above mentioned, and having been brought within the city by the Annexation Act of 1888, Ch. 98.

Thereupon the said justice of the peace issued his warrant to the Sheriff of Baltimore city, directing him to summon the jury as above mentioned, and to see that the jury reduce their inquisition to writing, and directing him to return the inquisition to the clerk of the Superior Court of Baltimore city. The jury have signed and sealed their inquisition. The trustees of the estate of David Leonard, deceased, except to the confirmation of the inquisition for want of jurisdiction in this Court to confirm it.

The want of jurisdiction is based principally upon two grounds: 1st. Under the general laws for the incorporation of railroad companies (Code of Public General Laws, Article 23, Secs. 157 to 204, and the Acts of Assembly amending the charter of this company) no power is granted to condemn lands in Baltimore city; and, 2nd. No Court in Baltimore City (certainly not the Superior Court) is named or provided to confirm, or to set aside the inquisition of the sheriff's jury.

1. It is provided in Section 159 of Article 23 of the Code, that the certificate of the railroad company incorporated thereunder shall, among other things, specify "the name of the places of the termini of said road, and the county or counties, city or cities, *through which such roads shall pass*," etc. The certificate is to "be acknowledged before a justice of the peace, and certified by the clerk of the Circuit Court for any county through which the road passes; and when said certificate is executed, it shall be the duty of the persons executing the same to submit it to one of the judges of the judicial circuit within which the county where it was acknowledged may lie, or to one of the judges of the Supreme Bench of Baltimore City, *if acknowledged in Baltimore City*, in order that the said judge may determine whether said certificate is in conformity with the law." The acknowledgment is to be made before a justice of the peace for any county through which the road passes. Baltimore City is expressly designated as a place in which such acknowledgment may be made. In the case of Oler vs. The Baltimore & Randallstown Railroad, 41 Md., 583, the pass-

ing of a railroad, incorporated under the general law, through some portion *of the city*, was made the basis upon which the validity of an acknowledgment in the city was sustained. Sec. 167 A (Act of 1892, Chapter 657) contains provision for notice, *if the lands or property sought to be condemned lie within the city of Baltimore*, by publication at least twice a week for two successive weeks in some daily newspaper published therein. We must, therefore, conclude that Secs. 157 to 204 of Article 23 contemplate and provide for the formation of railroads to run within and through the city of Baltimore. In the grant of the power of condemnation, Sec. 167 provides for the appropriation of the property of individuals. Sec. 169 provides for the use and occupation of any road, street, alley or public way, or ground of any kind owned or in charge of a municipal or other corporation or public officer or authority, declaring that the properly constituted authorities may agree upon the terms or conditions upon which the same may be used or occupied; and that upon failure to agree, condemnation may be had in the same manner and upon the same terms as provided for the appropriation of property of individuals by Sec. 167. And then follow provisions for the recovery of damages for special injury to private property occasioned by the use of the public way on the part of the railroad company, and the further provision that "no railroad company shall be allowed to pass through the city of Baltimore without the consent of the municipal authorities."

In our opinion, the consent of the municipal authorities is the only limitation, under the general law, upon the right of a railroad company to pass through the city of Baltimore. This consent having been obtained, the Western Maryland Tidewater Railroad Company may exercise in Baltimore City the powers of condemnation, with respect to private property, conferred by Sec. 167.

2. Has the Superior Court, under Sec. 167, the power to confirm or to set aside this inquisition? The right of eminent domain is an attribute of the sovereignty of the State. Its exercise is vested in the legislature. The legislature which invokes its exercise must create the agencies and tribunals

to assert and enforce this right. Until the statute provides the machinery and designates the tribunal, no Court has jurisdiction to confirm an inquisition of this kind. By the Constitution of 1867, in force when all the provisions of the general railroad incorporation laws were passed, the jurisdiction of the Circuit Courts in the counties, and of the several Courts in Baltimore city, is clearly defined. The legislature has express power to reapportion, change or enlarge, the jurisdiction of the several Courts in Baltimore city. It has power to choose between the Courts in Baltimore city and to direct that inquisitions in condemnation cases be confirmed by any one of them or by all of them. In the exercise of such power, the Superior Court has been designated by direction to the Sheriff to return to its clerk such inquisitions as are mentioned in Article 23, Sec. 251. In like manner the Circuit Court of Baltimore city has been chosen for inquisitions in condemnation of property taken for Patterson Park, whilst under the Act of 1890, Chapter 139, it was provided that in the exercise by the Baltimore Belt Railroad Company of the *powers of condemnation by said company for the acquisition of property or land * * * for its said railroad within the city of Baltimore, in the manner provided by Article* 23 *of the Public General Laws of the State of Maryland*, under which it, as well as the Western Maryland Tidewater Company, was incorporated, the Superior Court of Baltimore city, the Court of Common Pleas, and the Baltimore City Court, should, respectively, have the same powers and rights which are conferred under said Article 23, upon the Circuit Courts of the counties; the inquisitions to be returned by the sheriff to the clerk of the court which may be named in the warrant of the justice of the peace. The only question, then, is, under Sec. 167, where the terms employed are that "it (the inquisition) shall be returned by the sheriff to the clerk of the Circuit Court for his county," what Court is meant to be designated.

By Section 11 of the first Article of the Code, among the rules of interpretation for the Code, it is provided "that the word county shall be construed to include the city of Baltimore, unless such construction would be unreasonable." Being of opinion that pri-

vate property in Baltimore city is liable to condemnation for the proper construction of the Western Maryland Tidewater Railroad Company, according to the provisions of Secs. 167 and 167A, and applying the above rule of interpretation, and in the light of the power and practice of the legislature with reference to the designation of the Courts of Baltimore city to which inquisitions should be returned, we are also of opinion, notwithstanding the able argument of counsel for the railroad company maintaining the identity of the civil jurisdiction of the Superior Court in the city with that of the Circuit Courts for the counties, that we cannot read for "Circuit Court of his County" in this statute, "Superior Court of Baltimore City," but that the natural and reasonable interpretation of all the terms used therein respecting the machinery for such condemnation would indicate that in a proper case application may be made for condemnation of land in Baltimore city to any justice of the peace of said city, who shall thereupon issue his warrant under his hand and seal to the sheriff of said city, requiring him to summon a jury * * * who shall reduce their inquisition to writing and sign and seal the same; it shall then be returned by the sheriff to the clerk of the Circuit Court of Baltimore city, and be filed by said clerk in his office, and shall be confirmed by said Court, at any time after the expiration of thirty days from the date of such filing, etc.

In this connection it is a significant fact that the original act for the incorporation of railroad companies under a general law, including therein the present Section 167 of Article 23, was passed in 1870, and at the same session of the legislature (Chapter 68) provision was made for condemnation of land which might be found necessary to be added to Druid Hill Park, then situated in Baltimore county, or to Patterson Park, situated in Baltimore City. By the last mentioned act, inquisitions as to Druid Hill Park were to be returned by the sheriff to the clerk of the Circuit Court for Baltimore county, or in the case of Patterson Park to the Circuit Court for Baltimore city.

In the present case the Sheriff of Baltimore city has not been directed to return the inquisition of the jury to the proper court. Although under the rules of the Supreme Bench of Baltimore city "all exceptions to the ratification of inquisitions by a jury summoned by the sheriff for the condemnation of property," no matter in which of our courts the same may be filed, are to be determined by the same judge—the Judge-at-Large—we are unable to confirm this inquisition as of the Superior Court, and the exception to the jurisdiction of the Court will have to be sustained.