IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## WESTERN DISTRICT—PITTSBURGH, 1889.

### BOROUGH OF MILLVALE v. EVERGREEN RAILWAY CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 28, 1889—Decided January 6, 1890.

[To be reported.]

1. There is no specific definition, either statutory or in common understanding, of the term "passenger railway," and no necessary inference follows from the use of that term, in the title of an act of incorporation, that the franchise it confers is restricted to a railway upon the streets of a municipality, of limited extent, and without authority in the company to carry anything but passengers, or to use steam-cars and the kind of rails appropriate therefor.

2. The terms "railway" and "railroad" being synonymous, the term "passenger railway" having no precise meaning, and the name of a corporation not being necessarily descriptive of its purposes and object, a title in the words, "An Act to incorporate the Lawrenceville & Evergreen Passenger Railway Company," is sufficient to authorize the passage thereunder, prior to the constitution of 1874, of an act granting a special charter for a steam railroad.

3. A title declaring an act to be a supplement to a former one is a sufficient statement of the subject matter, if the legislation therein contained is germane to the subject of the original act; wherefore, the act of March 9, 1872, P. L. 290, entitled "A supplement to an act to incor-

porate the Lawrenceville & Evergreen Passenger Railway Company, approved May 13, 1871," P. L. 850, authorizing said company to extend its road, and giving it all the powers specified in the act of February 19, 1849, P. L. 79, is not unconstitutional by reason of its title.

4. A railroad company whose charter gives it, without qualification, the right to lay its track upon any public road, opened or afterward to be opened, has a right to construct and operate its road upon and along the streets of an incorporated borough without obtaining the consent of the borough authorities thereto, its powers in the exercise of its franchises being of just as high and authoritative origin as the right-of the borough itself to exist.

5. It is not necessary that each individual act, proposed to be done by a corporation, be authorized by the express letter of its charter, the ordinary means of exercising its powers following the grant of the powers, without express mention; wherefore, a railroad company authorized to use steam and carry freight on its road, may lay on a street the T rails in common use for such railroads, although they be not expressly authorized and obstruct public travel more than those used by horse railways.

6. A railroad company chartered by a special act of incorporation which contains no restriction as to the gauge of its track, has the right to adopt any gauge in ordinary use; and if it adopt the narrow-gauge at the time of building its road, and use the same continuously for many years thereafter, it is not thereby concluded from afterwards making any change in its gauge or the character of its rails, provided that it keeps within the limits of its chartered rights.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 225 October Term 1888, Sup. Ct.; court below, No. 397 September Term 1881, C. P. No. 1 in Equity.

On August 20, 1881, the burgess and town council of the borough of Millvale filed a bill in equity against the Evergreen Railway Company and the Pittsburgh & Northern Railroad Company, averring that the Lawrenceville & Evergreen Passenger Railway Co., without legal right and without the consent of the plaintiff, had constructed a narrow gauge steam railroad upon certain streets in said borough, which railroad was not the kind of road authorized by its charter and was a dangerous nuisance; that the franchises of said company had become vested in the defendants, who without right and against the protest of the plaintiff, intended to extend said road and to widen it to a standard-gauge road, which would render it

more dangerous and a much greater nuisance; praying for an injunction to restrain the defendants from laying any tracks on and over Bridge street in said borough and from widening the gauge of their tracks already laid upon the streets of said borough; for a decree, upon final hearing, that the defendants remove their tracks from Grant avenue and Hooker street, and refrain from further use and occupancy of any of the streets in the borough for the purposes of their said tracks; and for general relief.

The Evergreen Railway Co. answered, maintaining a right in itself, as the successor of the Lawrenceville & Evergreen Passenger Railway Co., to construct, widen, maintain and use the tracks referred to in the bill, and denying the right of the plaintiff to the relief prayed for. The Pittsburgh and Northern Railroad Co. filed a separate answer, disclaiming and denying any interest in the matter in controversy, and it was subsequently agreed by counsel that the bill should as to it be dismissed.

Issue having been joined, the cause was referred to *Mr. John C. Newmyer*, as examiner and master.

At the hearing before the master the parties agreed upon a statement of facts, which should constitute the master's findings of fact, and was as follows:

1. That the plaintiff is a borough, incorporated by an act of assembly, of the state of Pennsylvania, approved February 13, 1868, under the corporate style and title of The Burgess and Town Council of the Borough of Millvale, and the territory comprising said borough is situate within the county of Allegheny.

2. That Bridge street, in said borough, is a street extending from the Ewalt (or Forty-third) street bridge over the Allegheny river to the Allegheny and Butler plank-road; that Grant avenue is a street extending from said Allegheny and Butler plank-road to Hooker street; and Hooker street is a street extending at right angles with Grant avenue to the northern boundary of the borough; said streets were all duly laid out and opened, and have been in continuous use by the public since prior to 1871; that Grant avenue and Hooker street are each of the width of 50 feet throughout, and Bridge street is of the width of 45 feet; and said three streets form a

WESTERN DISTRICT, 1889

main thoroughfare and line of travel through said borough from the Ewalt-street bridge to the borough line. ·

3. That about the year 1872 the Lawrenceville & Evergreen Passenger Railway Co. built a narrow-gauge steam railroad, of a gauge of three feet, from the southerly terminus of Grant avenue, in said borough of Millvale, to Evergreen Hamlet, in Ross township. That said road was constructed upon and along the whole length of Grant avenue, and upon and along the whole length of Hooker street from Grant avenue to the borough line; that said road was constructed through the centre of said two streets, except where said streets intersect, and was constructed by laying wooden ties upon said streets and fastening iron T rails across said ties, and in such a manner as to render ·it impracticable for teams and vehicles to be driven across said railroad track, except at certain street crossings; that where said streets intersect, a curve was formed in each from the centre of the street to within eight feet of the outside line of the street and back again to the centre of the street; that the distance from curb to curb on said streets is thirty feet, and the space occupied by said railroad is eight feet, leaving eleven feet on either side of the track free from any obstruction or impediment by said railroad; that at and on either side of the point where Butler street crosses Grant avenue, said railway company made a cut through the centre of Grant avenue wide enough for the construction of a single track and about 600 feet in length, thereby rendering it necessary for the sides of said street to be graded down to a level with said track; and also necessitating the grading down of some of the streets crossing Grant avenue at great cost to said borough; that previous to the construction of said road said Grant avenue at said cut was impassable for vehicles, and certain cutting was necessary to make it passable, but said railroad necessitates the cutting to a much greater extent than would otherwise have been required; that the said street, at said point, is now in the same condition as the remainder of the street with reference to the railroad thereon and travel along it, and since the construction of said railroad, and shortly before the filing of the bill in this case, said company constructed a turn-out or switch upon and near the southerly terminus of Grant avenue.

4. That said railroad was constructed as an ordinary steam

railroad, and of the ordinary gauge of a narrow-gauge railroad, and its gauge is not the gauge of the Citizens Passenger Railway in the city of Pittsburgh, but, since the filing of the bill in this case, the ties of said railroad have been changed from narrow-gauge ties to ties suitable for a standard-gauge railroad.

5. That said railroad was constructed in the manner aforesaid, and upon the public streets in said borough, without the consent of the borough authorities, but against their protest. And ever since its construction the company operating said road has continued to run freight and passenger cars and steam locomotives over and upon said railroad and upon said two streets.

6. That said Lawrenceville & Evergreen Passenger Railway Co. claimed the right to locate, construct and operate said railroad upon said streets, by virtue of its act of incorporation, entitled, "An Act to incorporate the Lawrenceville & Evergreen Passenger Railway Company," approved May 13, 1871, and the act of assembly, approved March 9, 1872, entitled "A supplement to an act to incorporate the Lawrenceville & Evergreen Passenger Railway Company, approved May 13, A. D. 1871."

7. That subsequent to the construction of said railroad, and prior to the filing of the bill in this case, all the rights, privileges, franchises and property of the Lawrenceville & Evergreen Passenger Railway Co. became vested in the Evergreen Railway Co., the defendant in this case, by virtue of a judicial sale of all the rights, privileges, franchises and property of said Lawrenceville & Evergreen Passenger Railway Co., under and according to the provisions of the act entitled "An act concerning the sale of railroads, canals, turnpikes, bridges and plank roads," approved April 8, 1861, and the supplement thereto, approved May 25, 1878, P. L. 145.

Upon the facts, so agreed upon, the master, on November 19, 1887, reported his opinion, as follows :

The facts being thus undisputed, the only questions presented by counsel for determination involve the construction and constitutionality of the original act of incorporation of the Lawrenceville & Evergreen Passenger Railway Co., approved May 13, 1871, P. L. 850, and the supplement thereto, approved

March 9, 1872, P. L. 290, entitled "A supplement to an act to incorporate the Lawrenceville & Evergreen Passenger Railway Company, approved May 13, A. D. 1871."

The contention of counsel for plaintiff is, that the act of incorporation of May 13, 1871, conferred on the company thereby created only the restricted privileges of a "passenger railway," as distinguished from the more general and comprehensive powers granted to a "railroad," and that such intent is shown by the use of the word "passenger," in the title, otherwise the title is misleading, and therefore fatally defective; that the supplement approved March 9, 1872, seeks to enlarge the powers of the company by authorizing the extension of its line to Butler county, and granting to it "all the powers and privileges in locating, constructing and operating their road as are contained in the act regulating railroad companies, approved February 19, 1849, and the several supplements thereto, and thereby changes the entire character of the corporation without clearly expressing such object in the title ; and, not being germane to the original subject is consequently obnoxious to the constitutional amendment of 1864, which declares "that no bill shall be passed by the legislature containing more than one subject, which shall be clearly expressed in the title, except appropriation bills."

These propositions were very earnestly and ably urged by the counsel, and it must be admitted that the questions thus raised are not free from doubt or uncertainty.

In support of the first proposition, it is contended that the term "passenger railway" has a technical and well defined meaning, and that the powers granted to such companies are much more limited than those possessed by "railroads;" therefore, an act which confers the enlarged privileges enjoyed by the latter (such as the right of eminent domain) under a title which purports to be for the incorporation of a "passenger railway," is for the reason above stated unconstitutional.

Two cases are cited to show the distinction between passenger railways and railroads. In the Kentucky case of Louisville etc. R. Co. v. Louisville City R. Co., 2 Duv. 175, a railroad is defined to be for the use of the universal public in the transportation of all persons, baggage and other freight; and a street railway, as dedicated to the more limited use of the local public,

for the more transient transportation of persons only, and within the limits of a city only. The other is the case of the Commonwealth v. Central Pass. Ry., 52 Pa. 519, wherein it is said, " A distinction has been recognized between railroads as a class and passenger railways," but exactly wherein that distinction lies is not stated, nor was the constitutionality of an act of assembly involved in that case. It is obvious that the Kentucky case, which simply attempts to define the nature of a street railway, affords but little assistance to this inquiry. It may be admitted that if the word "street" were used in the title to an act of incorporation, which conferred the right to condemn and take private property, that such a title would tend to mislead by excluding, impliedly at least, any other location; but, however that may be, such is not the case now under consideration, neither the title nor the body of the act containing such words of limitation. True, in the case of West. Penna. R. Co.'s App., 104 Pa. 406, cited by plaintiff, the court incidentally said that the defendant company was originally incorporated as a street passenger railway, but an examination of the case shows that the questions there presented were essentially different from those now under consideration, which were not involved in or material to that issue. The question there raised was not a constitutional one, but related mainly to the right of a private party to assert and enforce forfeiture of the franchises of a corporation by bill in equity, on the ground of nonuser or abandonment.

The difficulty of accurately determining the precise powers and privileges to be enjoyed by passenger railways, may be inferred from the fact that prior to the enactment of May 23, 1878, P. L. 111, there was no general law in force in Pennsylvania, under which such companies could be incorporated. They all, like the defendant company, existed and held their franchises under and by virtue of special acts of incorporation; and, while usually confined by the terms of their charters to the streets of a particular town or city, such limitation was neither necessary nor universal, while the powers conferred differed in scope in almost every instance; some companies, for example, being confined to the transportation of passengers only, and the use of horse power as a motor, while others were permitted to carry freight as well as persons, and also to use steam as a

motive power. With this diversity of powers granted to these companies, and in the absence of any well defined meaning attached to the term "passenger railway," it is plain that each act of incorporation must be examined at length in order to ascertain the extent of those powers, as no title could or did furnish a complete index to the contents of the act, nor is it legally necessary that it should. "If the title fairly gives notice of the subject of the act so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary: " Allegheny Co. Home's App., 77 Pa. 77. Does then the title to the act of May 13, 1871, which is "An Act to incorporate the Lawrenceville & Evergreen Passenger Railway Company " comply with this rule?

It will be observed that this language does not necessarily indicate an intent to confine the corporation to the use of streets or within the limits of a town or city. On the contrary, it may fairly be inferred that it was to connect the locality known as Lawrenceville, in the city of Pittsburgh, with Evergreen, a hamlet or village in Ross township; and an examination of the body of the act would have clearly shown that such was the object. It, in terms, fixes the termini of the road at Forty-third street, Pittsburgh, and Evergreen Hamlet in Ross township. The route is located partly in the city of Pittsburgh, thence across the Allegheny river by the Ewalt-street bridge to the Allegheny and Butler road, and thence by the most practicable route to Evergreen Hamlet, with the right to go by and upon any public road now or hereafter to be opened. Power is given to construct such turnouts and switches as may be necessary; to cross any other railroad at grade; to use steam as a motive power, and to carry freight and passengers. Authority is also given to consolidate with the Citizens or any other passenger railway near its city terminus. Without stopping to consider the full extent of these powers and privileges, it must be apparent that they are greatly in excess of those ordinarily necessary for the operation of a mere street or city railway.

With the information thus furnished by the title, and in the absence of a legal definition of " passenger railways," which would exclude the powers granted by this act, the master, under the weight of Pennsylvania authorities, must decline to sustain the plaintiff's position, so clear a case not being presented as to

overcome the presumption of constitutionality.   " All the presumptions are in favor of the constitutionality of an act of assembly. . . . . To doubt is to decide in favor of its constitutionality.   It is only in a clear case that we are justified in declaring an act to be unconstitutional:" Craig v. First Presb. Church, 88 Pa. 46; Cooley's Con. Lim., 3d ed., 182, et seq.

The same conclusion seems inevitable with respect to the supplemental act of March 9, 1872, which contains an enlargement of the corporate powers of the company before recited. The title thereto is " A Supplement to an act to incorporate the Lawrenceville & Evergreen Passenger Railway Company, approved May 13, 1871." Precisely such a title to a supplement was before the court in the State Line etc. R. Co.'s App., 77 Pa. 431, and the rule was there laid down " that where the legislation in the supplement is germane to the subject of the original bill, the object of such supplement is sufficiently expressed in the title," and the practice to so designate supplements was there shown to be so general and uniform as to entitle it to great weight with the court.   Under this rule, and if the master's views respecting the original act be correct, he fails to find any warrant for holding the supplement unconstitutional, as all the legislation therein contained relates to the defendant corporation and is germane to the subject of the original act.   Counsel for defendant also cited a decision in which your honorable court very recently passed upon the matters now under consideration, and although the proceedings were not between the parties to this controversy, these same acts of assembly received a judicial construction which, under all the circumstances, the master believes to be binding on him. This decision was rendered in the equity proceedings of Graff, Bennett & Co. v. The Evergreen Ry. Co., this defendant, at No. 463 December Term 1886, in which the same constitutional questions seem to have been raised, and in an opinion filed by his Honor Judge Stowe, the objections were held not well founded, thus sustaining the constitutionality of both the original and supplemental act: 2 Pa. C. C. R. 502.

The master therefore concludes that neither the original act of incorporation of May 13, 1871, nor the supplement thereto, approved March 9, 1872, has been shown to so offend against the constitutional provision as to sustain the plaintiff's

contention. It does not seem to be questioned that the defendant company possesses the legal right to construct its road in the manner complained of, if these acts of assembly are constitutional. As such is, in effect, the conclusion reached by the master, he accordingly recommends that the bill be dismissed at the costs of the plaintiff, and herewith submits a form of decree in conformity with this opinion.

All of which is respectfully submitted.

The plaintiff filed with the master exceptions to his conclusions of law, specifying that he erred in not finding:

11. That the supplement of March 9, 1872, P. L. 290, was not germane to the original act of May 13, 1871, P. L. 850.[2]

12. That the subject of said supplementary act was not clearly stated in its title.[3]

13. That the title of said supplement was misleading.[4]

14. That said acts of 1871 and 1872, being dependent upon one and the same title, and being in effect one and the same act, are in conflict with § 8, article IX. of the constitution, as amended in 1864, because (a) they relate to more than one subject and only one is expressed in the title; (b) the title is misleading as to the supplemental part; (c) no notice is given in the title as to the subject matter of the supplement.[5]

Said exceptions, being overruled by the master, were afterwards renewed before the court, and after argument, were dismissed, and the decree recommended by the master adopted and entered, without opinion filed. Thereupon the plaintiff took this appeal, specifying that the court erred:

1. In entering the decree dismissing the plaintiff's bill.

2–5. In dismissing the plaintiff's exceptions.[2 to 5]

6. In not decreeing the relief prayed for by the plaintiff.

*Mr. Walter Lyon* (with him *Mr. J. C. Shoemaker*), for the appellant:

1. In the legislation and decisions in this state, railroads and passenger railways are recognized as different and distinct classes. The latter term always implies a railway restricted to the bounds of a city or town or its immediate vicinity, laid upon a highway already constructed, to the grade of which it must conform; not using T rails, but such as will not interfere

with the use of the highway by the public, and differing from railroads in the gauge, the motive power, the cars, the rate of speed at which they run, and in a variety of other respects. We have been unable to find a single statute in which the term, passenger railway, is used to designate a railroad, or as synonymous therewith. Never is the latter word used alone as the equivalent of passenger railway. The distinction is recognized by the courts: Commonwealth v. Central Pass. Ry., 52 Pa. 519; West. Penna. R. Co.'s App., 104 Pa. 406; Louisville etc. R. Co. v. Louisville City Ry. Co., 2 Duv. (Ky.) 175. An examination of Hestonville etc. R. Co. v. Philadelphia, 89 Pa. 210, will show that that case does not decide that "railroad" and "passenger railway" are synonymous. That the departments of the state recognize the distinction is entitled to weight: State Line etc. R. Co.'s App., 77 Pa. 432.

2. The Lawrenceville & Evergreen Passenger Railway Co. was originally incorporated as a passenger railway. Aside from its title, reference is made to the body of the act of incorporation as showing that the road was to be a local one, built on existing highways, and by implication was intended to be just such a structure as the Citizens Passenger Railway, with which it was authorized to connect. Under the right to use steam, its cars must be such as can be used on what are commonly understood to be passenger railways: Commonwealth v. Central Pass. Ry., 52 Pa. 519. The act of March 9, 1872, P. L. 290, having no new or distinct title, but being entitled merely a supplement to the original act incorporating this company, must be in its subject matter germane to that of the original act, in order that its title may be treated as sufficient: State Line etc. R. Co.'s App., 77 Pa. 429; Craig v. First Presb. Church, 88 Pa. 42. This supplement is not germane to the original act, the object of the supplement being to clothe this company with all the powers of an ordinary railroad company, and to change its original design: West. Penna. R. Co.'s App., 104 Pa. 406. Hence the supplement cannot stand. Moreover, as a supplement, it is to be considered an addition to and a part of the original act, and both are to be regarded under the title of the latter. The act therefore has two subjects, a passenger railway and a railroad, but one of which is expressed in its title.

3. If, however, it be contended that the only subject of the original act and its supplement is a railroad, then the subject is different from, and not clearly expressed in the title, and the title is misleading and not in conformity with the constitution. The title must be in such form as clearly and fully to give notice of the legislative purpose, to those who may be specially interested: Dorsey's App., 72 Pa. 192; Phœnixville Bor. Road, 109 Pa. 44; Union Pass. Ry. Co.'s App., 81* Pa. 91. The title of the act in question is even more misleading than the one involved in the case last cited. The title was notice that the matters contained in the act would not affect any person or relate to anything, otherwise than by providing for a local passenger railway to operate between Lawrenceville and Evergreen: Beckert v. Allegheny, 85 Pa. 191. Yet the supplement of 1872 not only attempts to change this passenger railway into a railroad, but also to extend it into new territory where perhaps it had never been heard of. Corporate franchises must be plainly and unequivocally conferred, and where there is any doubt as to the existence of the powers claimed by a corporation against the public, the construction is most strongly against the corporation; all presumptions are against the corporation and in favor of the public, and to be in doubt is to be resolved against the former: Penna. R. Co. v. Canal Commissioners, 21 Pa. 22; Commonwealth v. Erie etc. R. Co., 27 Pa. 339; Commonwealth v. Cent. Pass. Ry., 52 Pa. 516.

*Mr. Johns McCleave*, for the appellee:

1. The act incorporating the Lawrenceville & Evergreen Passenger Railway Co. confers upon that corporation unqualified power to build a railway between certain points; to use steam as a motive power on every portion of the line; to go upon any public highway, and to carry freight and passengers. There is no limit as to the character of the railway, as respects either its gauge, the form of its rails, or the manner of its construction; no limit as to the nature of the device for applying steam as a motive power, or as to the size or form of the carriages for transporting freight and passengers. Clearly the act attempts to confer complete authority for the construction and operation of the road as it now is. It is contended, how-

ever, that this attempt is nugatory because of the name given to the corporation intended to be created. The argument for appellant assumes two propositions: (1) That the title of the act expresses as its subject the incorporation of a passenger railway; and (2), that a passenger railway is not, and cannot have annexed to it the powers of a railroad.

2. The first assumption is obviously groundless. It presupposes that the name of a corporation must and does express its purpose. We are not referred to any constitutional provision or other law to this effect, and there is no ruling practice on the subject. The corporation now supplying Pittsburgh with natural gas was incorporated by an act entitled "An Act to incorporate the Philadelphia Company," and was thereby given, under that name, power to engage in any business in any part of the state, and even invested with the right of eminent domain. The constitutionality of that act was sustained by this court only a year ago: Carothers App., 118 Pa. 468. Many examples of corporations bearing names that do not in any manner indicate their objects, purposes or powers, will occur to any one. The subject of the act here in question is the creation of a corporation. This is clearly expressed in its title. The name of the corporation to be created is also given, though, we submit, this is not required by the constitution. The real complaint of our opponents is not that the title of the act does not express its subject, but that the name of the corporation is not exactly as suitable as they would like.

3. If, as we think we have shown conclusively, the plaintiff's first assumption is without foundation, its second proposition, which necessarily rests on the first, falls with it. But even if the title of the act did set forth its subject to be the incorporation of a company to construct a passenger railway, the argument that therefore the act cannot confer upon the company any powers or rights ordinarily given to railroads and not ordinarily given to passenger railways, in the limited definition which the plaintiff gives that term, is unsound. This argument has been well disposed of by the master, and his reasoning is vindicated in a case not cited by him: Hestonville etc. R. Co. v. Philadelphia, 89 Pa. 210. If, as that case holds, "an act relating to railroad companies" properly embraces street railways, how can it be that an act creating a corporation by such a name as that of this

defendant, may not give it the powers specified in the defendant's charter? And if the plaintiff's contention as to the original act of incorporation cannot be sustained, the argument respecting the supplement of 1872 is vain. Its subject is sufficiently expressed in the title: State Line etc. R. Co.'s App., 77 Pa. 431.

OPINION, MR. JUSTICE GREEN:

Notwithstanding the very ingenious and elaborate argument of the learned counsel for the appellant, we feel constrained to concur with the master and court below in their view of the contention between these parties.

It is very earnestly argued for the appellant that both the original act of incorporation of the defendant company and the supplement thereto, are in hostility with the provisions of the constitution, and therefore void. The basis of the argument as to the act of incorporation is, that the title of the act conveys a purpose to charter a passenger railway company, whereas the text of the act really charters a steam railroad company, and the two are so inconsistent that the text must fall. If it were true that a passenger railway could only be a railway laid upon the streets of a municipality, of a very limited extent, propelled only by horse-power, without authority to carry anything but passengers, and limited to the use of a particular kind of rail, upon which steam cars and engines could not be propelled, there would be considerable force in the argument. But there is no such definition of a "passenger railway," and there never was. It is true that when passenger railways, located upon the streets of cities and towns, were first built and used, they were, in point of fact, usually characterized by some of the above qualifications. But that circumstance proves nothing as to the extent or kind of the corporate franchises in any particular case. There was no general law at that time under which this class of railroad companies could be incorporated, and hence there were no means of determining what the corporate franchises were, except by an examination of the act of incorporation in each instance. These were altogether without uniformity. The language of the learned master in his report in this case describes them correctly when he says: "They all, like the defendant company, existed and held their franchises under and by virtue of special acts of incorporation. and, while usually confined by the terms

of their charters to the streets of a particular town or city, such limitation was neither necessary nor universal, while the powers conferred differed in scope in almost every instance; some companies, for example, being confined to the transportation of passengers only, and the use of horse-power as a motor, while others were permitted to carry freight as well as persons, and also to use steam as a motive power." An inspection of some of the numerous charters for this kind of roads, granted about the years 1857 to 1860, will show the greatest possible variety of conditions annexed to the grant of corporate powers in different charters. There being then no specific definition of the term "passenger railway," either prescribed by statute or existing in the common understanding, it follows that no necessary inference of a restricted franchise flows from the use of the term in the title of an act. In the case of Allegheny Co. Home's App., 77 Pa. 77, we said: "It will not do therefore to impale the legislation of the state upon the sharp points of criticism; but we must give each title as it comes before us a reasonable interpretation, ut res magis valeat quam pereat. If the title fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary. It need not be an index to the contents, as has often been said."

The title to the present act of incorporation gave notice that a company bearing the name of the "Lawrenceville & Evergreen Passenger Railway Company," was to be incorporated. It was only the name of the company, and not its purpose or object, that was described. The terms "railway" and "railroad" company have no different signification. They are defined synonymously in the dictionaries, and are used in the same sense in the common language of men. In the general law of May 23, 1878, P. L. 111, authorizing the incorporation of street-railway companies, the terms "railway" and "railroad" are used indiscriminately, as representing the same thing. Thus, in the title it is "railway" companies that are mentioned. In the second section it is provided that $2,000 of stock for every mile of "railroad" shall be subscribed. The sixth section provides that the president and directors of any "railroad" company organized under the act shall have power to borrow money. The seventh section directs notice to be given for payment of instalments by publication in one or more

newspapers published in the county where such "railroad" shall be located. This form of expression is repeated in the twelfth section, and in the thirteenth the corporation created under the act is called "railroad corporation." In the fifteenth section it is referred to as a "passenger railway company," and in the sixteenth as "street passenger railway," where the structure itself is described. It is perfectly clear, therefore, that in the legislative sense these several modes of expression are used to designate the same thing. So far as the judicial sense of the community of meaning of these terms is concerned, it is strongly expressed in the case of Hestonville etc. R. Co. v. Philadelphia, 89 Pa. 210, in which we expressly held that city passenger railways ·were included within the term "railroads," employed in the act of May 16, 1861, and that the provisions of said act relating to merger apply to said railways. The act of 1861 is entitled "An Act relating to railroad companies." It was argued there, as now, that this title did not embrace street passenger railway companies, and hence there could be no merger of such under the provisions of the act. But we held differently. Mr. Justice TRUNKEY, in delivering the opinion of this court, said: "In 1861 all railroads were incorporated by special laws, and, in so far as each law did not prescribe specially, reference was made to the provisions of the act of February 19, 1849. This was common in charters for passenger railroads as well as others. In the statutes one class was generally styled 'railroads,' and the other more frequently, but not always, 'railways.' These words are popularly used as synonymous, and Webster defines both alike; but this matters little. A slight examination will show that the legislature did not use the words in a distinctive sense." After referring to several charters which combine both classes of roads into one corporation, the opinion proceeds: "These instances sufficiently indicate that the legislature indiscriminately used the words in₀ their popular sense. It is true that railroads were used in the country prior to their use on the streets of towns, and that many differences necessarily exist in their regulation and management. It is useless to name points of likeness and unlikeness, for there are many of each. And these vary in the same road, when one part is in the country and the other in a city. Recently narrow-gauge railroads have been introduced,

not laid on streets of cities, nor tunneled through hills and mountains, but running over the latter. All three kinds are railways,—are railroads. Then, as respects the title of the act of 1861, it embraces railways on streets as well as those through or over hills and mountains."

The foregoing expressions must be regarded as qualifying certain remarks contained in the opinion of this court in the case of Commonwealth v. Central Pass. Ry., 52 Pa. 506, in which a distinction between passenger railway companies and railroads generally was apparently asserted, of such a character as that legislation intended for one class could not or would not embrace the other. We say "apparently," because such was not the real meaning of the court, as the learned counsel for the appellant seems to think. Our Brother STRONG, who delivered the opinion, was simply interpreting the actual charter of a passenger railway company, in which there was nothing that gave it the right to use steam as a motor, or the right to carry freight as well as passengers, or, by consequence, the right to use the heavy high rails used on steam-roads for running locomotives and heavy freight trains. All this was literally true, and those conclusions were strictly correct, but what was said on this subject was said exclusively with reference to the facts of that case, and, by way of illustration, the difference between the heavy rails, which rise several inches above the surface of the street, and do constitute a material obstruction to the travel, and the rail in ordinary use in passenger roads, was selected and emphasized, but that was all. It was never intended to say or to intimate that there might not be different kinds of rails for passenger railway tracks, or that one kind of rail might not be used, even though it were in a slight degree more obstructive than another, if in other respects it were a suitable rail for such use. We think the learned counsel for the appellant overestimate the meaning of the language quoted in their argument from the opinion in the case referred to.

If, now, we turn to the language of the act of incorporation of the appellee in this case, we find it does, in the most express and emphatic manner, confer upon the appellee the right to use steam as a motive power, on and over any part of the road outside the limits of the city of Pittsburgh, and with those limits if certain consents are obtained. We find,

that express power is given to carry freight as well as passen gers over the road, and to construct such turn-outs and switches as may be necessary, and pass over and across any other rail-road at grade. In all these respects the grant of powers differs from that of the Central Passenger Railway Company, and it is seen at once that there is an absence of analogy between that case and the present. It is true, that in this case, as in that, there is no provision as to the kind of rails that may be used, but as the powers conferred are those of steam railroads, both as to the motive force and the kind of traffic to be trans-ported, there is a perfectly legitimate inference that such rails may be used as are ordinarily used in the transportation of freight as well as passengers, in cars moved by steam-power. No such inference was legitimate in the Central Passenger Railway case, because there were no such powers expressly granted, and they could not be inferred from a charter which conferred only the power to carry passengers, and upon a pas-senger railway to be laid upon the streets of a city. It was therefore properly held that the right to lay a heavy T rail, such as is used on steam-roads authorized to carry freight as well as passengers, did not exist. In the present case the road is authorized to be built in the country as well as in the city and town, and by the nearest practicable route between ter-minal points, with a right to occupy any public road then or thereafter to be opened; and, in this respect also, it differs from the Central Passenger Railway case, and more nearly re-sembles the Hestonville etc. R. Co.'s case. We are clearly of opinion that the title of the act of 1871 sufficiently expresses a purpose to charter a railroad company, and that there is nothing contrary to the constitution in the text of the law.

But the supplement of 1872 is also attacked for a similar reason, because the title contains no reference to the subject-matter of the act other than by reference to the title of the principal act. But the answer to this objection is, that the rule governing such cases is " that, where the legislation in the supplement is germane to the subject of the original bill, the object of such supplement is sufficiently expressed in the ile : " State Line etc. R. Co.'s App., 77 Pa. 431. This makes ecessary to consider only the character of the legislation ined in the supplement. That legislation is all contained

in two sections, the first of which authorizes the company by name to extend its road to the coal fields of Butler county, and the second confers upon the company all the powers and privileges of the act of February 19, 1849.   All this relates to the Lawrenceville & Evergreen Passenger Railway Company, and as that is the name of the company chartered by the act of 1871, to which it is expressly declared to be a supplement, and as the powers conferred are properly those which pertain to railroad companies, it cannot be doubted that the legislation of the supplement is germane to the subject of the original act of 1871.   In the case of Craig v. First Presb. Church, 88 Pa. 42, we held that when an act of assembly is entitled a supplement to a former act, and the subject thereof is germane to the subject of the original act, its subject is sufficiently expressed to meet the requirements of article III., § 3, of the constitution.   In view of these considerations and decisions, we are clearly of opinion that both the act of 1871 and the supplement of 1872 are lawful exercises of the legislative power, not prohibited by the constitution.

It only remains to consider whether the matters complained of in the bill are authorized by the charter and its supplement. These matters are the construction of the road itself as a steam railroad, the change of gauge from a narrow-gauge to the full width of the ordinary steam railway, and the proposed extension of the road beyond its original limits.   The road was built and run as a narrow-gauge steam railroad upon certain streets of the borough of Millvale, for a number of years prior to the filing of the present bill.   A former bill for an injunction to restrain the construction of the road seems to have been filed, and proceeded with to a final decision favorable to the company and adverse to the borough.   From that decision it seems no appeal was taken, and the occasion of the present bill appears to be the proposed widening of the gauge and extension of the road under the authority of the supplement.   As the authority to use steam as a motive power, and to carry freight as well as passengers, is clearly given by the charter, we think there is no merit in the objection to the right of the company to construct and maintain the steam railroad which it has built and operated thus far.   In point of fact, the defendant company has only exercised the powers expressly given to it when it made use of

steam as a motor, and when it carried freight as well as passengers. These powers carry with them the right to construct and to use the appliances ordinarily employed for those purposes. It is true no express power is given to use locomotive engines, or the heavy passenger and freight cars commonly used for the carriage of freight and passengers, nor is any express authority given to lay the T rails, which are also in common use on steam railroads. But as these are the methods which experience has established as appropriate, and indeed essential in the carriage of freight and passengers upon railroads or railways with steam as the motive power, they must be regarded as authorized by plain implication from the grant of the powers in question.

It is argued with much earnestness and force, by the learned counsel for the appellant, that "corporate franchises can only be plainly and unequivocally conferred, and, where a doubt exists as to the powers claimed by a corporation against the public, the construction is most strongly against the corporation in favor of the public." In support of this contention the customary citations are submitted in the paper-book from Commonwealth v. Railroad Co., 27 Pa. 339, that "a doubtful charter does not exist; because whatever is doubtful is decisively certain against the corporation," and, "if you assert that a corporation had certain privileges, show us the words of the legislature conferring them." Other citations from that and other cases are also presented. They are entirely correct, and when appropriate they are of controlling force. But they must not be misused. That each individual act done or proposed to be done by a corporation must be authorized by the express letter of its charter, is sheer nonsense. Powers are conferred, and, of course, there must be no doubt as to them; but the means of carrying those powers into operation follow the grant of the powers, and do not require express mention. Take the present case as an illustration. The right to use steam as a motive power is expressly given, but no power is given to use locomotive engines. Nevertheless, it is too plain for argument that the right to use locomotive engines undoubtedly exists under the defendant's charter; for the right to carry freight and passengers over a railroad or railway is given, and to use steam as a motive power, and in order to exercise that right

Opinion of the Court.

with that motive power, locomotive engines are essential, probably indispensable. So, too, the right to lay a T rail for such a railroad, while not expressly given, and while it is an obstruction to travel, is equally clear, because they are in common use for such railroads. Yet it may be, perhaps is, possible to carry both freight and passengers over a flat rail bolted to longitudinal stringers, or the ordinary flange rail used on street passenger railroads. But that possibility will not take away the right to use the more obstructive rail, because the latter is the one in general use for the exercise of the power which is conferred by the letter of the statute. It is true, also, that in the title of the defendant's charter it is named as a "passenger railway company," and an inference is sought to be drawn that its powers of carriage must be subordinated or limited to those ordinarily exercised by that kind of companies. This would be certainly so if there were no other powers expressly conferred, but, as such other powers are expressly conferred, they necessarily carry with them all the customary modes in which such powers are exercised.

So, too, it is urged that there was no power to change the gauge of the road from a narrow gauge of three feet to the wider one in ordinary use. But, as all the powers conferred upon railroad companies generally by the act of February 19, 1849, are extended to the defendant company by the second section of its supplement, there is no force in the contention. There is no limit to the gauge of this company's road in the charter or supplement, and they would necessarily have the same right to adopt any gauge in ordinary use, or that they might desire, which any railroad company would have under the general railroad law of the state. If it be said that the defendant adopted the narrow gauge at the time its road was built, and has used it ever since until now, as is alleged in the bill, the reply is at once manifest, that it is not at all concluded by such original adoption and continuous use. It parted with no right thereby to make any change in the gauge of its track or the character of its rail which its own interests or the advance in the science of railroad building might suggest, always, of course, within the limits of its chartered rights. It might as well be argued against the proposed change of gauge that because a particular kind of rail was in vogue, and was actually

adopted and used by a railroad company at and after the time of the construction of its road, it could never adopt another, but was concluded by its first choice, upon the theory of an exhaustion of its power. It will be seen at once that such an argument is entirely fallacious and untenable. Instead of such being the law, we have always held that railroad companies not only have the right, but are by law bound, to make use of the latest and best inventions and appliances tending to promote the comfort and safety of the public. This is notably the case in the matter of spark-arresters, and is equally applicable to couplings and other contrivances. The writer remembers when strap rails, laid upon longitudinal stringers and fastened down with spikes, were in common use on steam railroads; and he also remembers that snake-heads at the ends of the rails resulted from this method, occasioning frequent accidents and loss of life. When the T rails came into use, it became the undoubted legal duty of the old companies to abandon the flat rail, and use the new one, and any company failing to perform this duty would very quickly have received forcible and emphatic admonition to that effect both from juries and courts.

It is also alleged in the plaintiff's bill that all the acts of the defendant, both in laying its original track and in operating the same, and now in the proposed change of gauge and extension of its road, were and are done without the consent of the plaintiff, and against its earnest protest, and that the construction and operation of the road upon the streets of the borough is a great public nuisance, and dangerous to the lives of the citizens, and a hindrance to business on the streets. Of course, if, by the terms of the charter, it were necessary to obtain the consent of the borough authorities to construct and operate the road of the defendant upon the streets of the borough, this point would be well taken, and would prevail. But no rule is better settled than that the power of the commonwealth over the streets and roads within its territory, including those of its cities and towns, is paramount to that of the local authorities, and that right, when granted to a railroad company, is altogether independent of the municipality within which it is to be exercised. Said BLACK, C. J., in Commonwealth v. Railroad Co., 27 Pa. 354: " The right of the supreme legislative power to authorize the building of a railroad on a street or

other public highway is not now to be doubted. . . . . If such conversion of a public street to purposes for which it was not originally designed does operate severely upon a portion of the people, the injury must be borne for the sake of the far greater good which results to the public from the cheap, easy, and rapid conveyance of persons and property by railway. . . . . The right of a company, therefore, to build a railroad on the streets of a city, depends, like the lawfulness of all its other acts, upon the terms of its charter. Of course, when the power is given in express words there can be no dispute about it. It may also be given by implication." In the leading case upon this subject, the Phila. etc. R. Co., 6 Wh. 25, GIBSON, C. J., said: "It would be strange, therefore, were the streets of an incorporated town not public highways, subject perhaps to corporate regulation for purposes of grading, curbing, and paving, but subject also to the paramount authority of the legislature in the regulation of their use by carriages, rail-cars, or means of locomotion yet to be invented, and this without distinction between the inhabitants and their fellow-citizens elsewhere." In Williamsport Pass. Ry. Co.'s App., 120 Pa. 1, the present Chief Justice said: "It is not denied that the charter of the appellant company gives it the power to lay its tracks upon the streets in question, and, if it were denied, it would not matter, as such power is expressly conferred. . . . . There is nothing in the company's charter which makes the consent of councils a prerequisite to the exercise of its corporate powers in the extension of its road;" and we therefore held that the company was at liberty to extend its road without obtaining such consent.

In the present case the right to lay the track upon any public road then opened, or thereafter to be opened, is expressly given, without any qualification, and hence the consent of the borough of Millvale to the construction and operation of the road over its streets need not be obtained, and is a matter of indifference. But the charter does require that in order to cross the Ewalt-street bridge the consent of the bridge company must be obtained, and the right to use steam-power in the city of Pittsburgh also requires the consent of the bridge company, a majority of the property owners on Ewalt street, and the councils of the city. The necessity of obtaining consent in

these special instances intensifies the force of the proposition that consent is unnecessary for all the other purposes of the defendant in the exercise of its franchise. This being so, it will be seen at once that the borough has no control over the construction or operation of the road within its limits. The power of the defendant in the exercise of its franchise is altogether independent of the borough, and is of just as high and authoritative origin as the right of the borough to exist at all. The rights of both are derived from the same source, to wit, the legislative power of the commonwealth, and the company is not subject to the slightest obligation to go to the borough for consent to exercise any part of its corporate franchise. Any other doctrine would subordinate the corporate franchise of the defendant to the will of the borough councils, and cannot be sanctioned for a moment. Upon a careful consideration of the merits of the case, we are persuaded that there was no error in the action of the learned court below, and we must therefore sustain its decree.

Decree affirmed, and appeal dismissed, at the appellant's cost.