## The Glenside Home Protective Association, Assignee, v. Cheltenham and Abington Sewerage Company

*Foulke, Foulke & Knight*, for plaintiff.

*Smillie, Bean & Scirica* and *George Henry Huft*, for defendant.

DANNEHOWER, J., January 26, 1949.—This case is before us on preliminary objections to a complaint in assumpsit seeking reparations against a public utility.

In this action brought by the Glenside Home Protective Association, a Pennsylvania nonprofit corporation, as assignee of and attorney-in-fact for approximately 507 users of sewerage service furnished by and for patrons of Cheltenham and Abington Sewerage Company, against defendant, a public utility, plaintiff seeks to recover the sum of $3,999.34 together with penalties, interest, court costs and attorney's fees, which sum is alleged to represent the aggregate of the refunds awarded to the patrons by an order of the Pennsylvania Public Utility Commission, dated October 1, 1945, in the case Davis et al. v. Cheltenham & Abington Sewerage Company, complaint docket no. 10967.

From the bill of complaint, the following appear to be the material facts: Plaintiff corporation was formed in 1929 "to protect the property rights and interests of its members and otherwise to promote and safeguard the common good of the people within the limits of Glenside and vicinity". On October 6, 1930, the Pennsylvania Public Service Commission (predecessor to the present Pennsylvania Public Utility Commission) determined that defendant was entitled to a gross revenue of $36,140 a year. In arriving at this figure the commission allowed a certain amount for a net return to the company and a certain amount for expenses. One of the items of expense was an estimate of the charges that would have to be paid for sewer disposal through the facilities of Cheltenham Township and the City of Philadelphia. This figure was roughly $3,000 higher than subsequent events proved it should have been.

A tariff designed to produce the revenue of $36,140 was prepared by defendant, approved by the commission, and made effective on July 1, 1931.

Having seen that the company's expenses were lower than had been anticipated, the commission, on its own motion December 11, 1934, instituted a proceeding inquiring into the fairness, reasonableness, and justness of the rates provided by that tariff. The result was an order reducing the rates, which was appealed to the Superior Court and there modified. An allocatur was refused by the Supreme Court, and the commission then ordered a new tariff, effective January 1, 1937, to be filed in accord with its order, as modified by the Superior Court. The old rates were charged until December 31, 1936.

Meanwhile an action was begun by plaintiff on October 17, 1935, to recover the overcharges that had resulted from the tariff effective July 1, 1931. The commission found that reparations were due and by an order dated January 30, 1940, ordered them paid. On appeal the effective dates were challenged and modified so that it was not until March 23, 1942, that the period for which reparations were collectible, August 30, 1935, to December 31, 1946, was finally determined.

This was only a decision that reparations were payable, and not a decision as to whom they were payable or in what amount. After hearings the commission made such an order on October 1, 1945. Although all avenues of appeal on this order were exhausted on April 28, 1947, with the original order affirmed, defendant has refused to make any reparations and this suit is brought for their recovery.

In short, defendant's net revenue exceeded that which it was allowed by an order dated October 6, 1930. This action grows out of a proceeding begun on October 17, 1935, to recover the overcharges made.

The long delays have been caused by defendant's constant appeals and technical objections.

Defendant has raised seven preliminary objections —without merit and designed only to prolong the proceedings. Nevertheless, we shall consider them separately.

In its first objection defendant contends that plaintiff corporation is not one of its patrons. It is therefore argued that the right to recover reparations being statutory, plaintiff has no standing to bring this suit since assignees are not specifically given such a right by the statute. See the Act of July 26, 1913, P. L. 1374, which was superseded by the Act of May 28, 1937, P. L. 1053, 66 PS §1153. The action is governed by the prior law. In other words, defendant contends that its patrons' rights to reparations may not be assigned. But in general all rights are assignable unless forbidden by statute, the contract creating the right, or by the policy of the common law: A. L. I. Restatement of the Law of Contracts, §151. None of those elements is present.

The assignment of these rights to plaintiff does not injure defendant nor violate any provision against assignments. The assignment of a claim against a third person for money damages that can be specifically ascertained is not rendered invalid by the fact that litigation is necessary for its collection: A. L. I. Restatement of the Law of Contracts, §547(2). Here the money damages have been specifically ascertained by the commission's orders.

Though the Act of July 26, 1913, refers to reparations for damages which "have been actually sustained by such complainant petitioner," that is hardly enough to indicate an intent on the part of the legislature that a patron must recover in his own name.

Defendant's second preliminary objection attacks the power of plaintiff corporation to act as an assignee

and attorney-in-fact and sue as such because this specific power is not granted in its corporate charter.

In the first place, subject to the limits of its articles of incorporation, every nonprofit corporation has the power to sue: Act of May 5, 1933, P. L. 289, §§301-302, 15 PS §§2851-301-302.

Secondly, one of the corporate purposes set out in plaintiff's charter is "to protect the property rights and interests of its members. . .". If it is necessary to institute a legal action to protect these rights, the corporation has the power to do so since every corporation has by implication the power to do whatever is necessary to carry into effect the purpose of its creation unless such an act is prohibited by law or the corporation charter: Borough of Millvale v. Evergreen Railway Co., 131 Pa. 1 (1890).

Moreover defendant is not at liberty to assert such a defense of ultra vires: Act of May 5, 1933, P. L. 289, sec. 303, 15 PS §2851-303(A).

By its third preliminary objection defendant maintains that plaintiff's complaint is defective because the action of its governing body authorizing the suit is not set forth. There is no authority for this proposition, and in Wagner Bros. Co. v. Douglas (No. 1), 6 D. & C. 198 (1925), the opposite is stated. We see no reason why such a requirement should be added to the existing law.

The fourth and fifth objections are concerned with the differences between plaintiff's list of assignors and the names listed as entitled to refunds by the order of the Pennsylvania Public Utility Commission. Plaintiff admits that it lacks assignments for some names on the Pennsylvania Public Utility Commission list and has assignments for some not included by the Public Utility Commission. The other differences are minor in nature—misspellings of a surname, inclusion of a professional title, or the name of a wife on

one list and the husband on the other. In view of the fact that the commission itself commented upon the careless manner in which defendant's records were maintained and the refusal of defendant to coöperate, such mistakes are not surprising. The inclusion on both lists of contract numbers should facilitate adjustment. These technical differences can be cured by stipulation of counsel, pretrial conference, or in the last event be left as an issue of fact for the jury. These objections are certainly no grounds to dismiss the entire complaint.

The sixth objection questions the authenticity of the assignments and powers of attorney, and the authority under which the action is brought. Defendant contends that depositions should be taken to settle issues it hopes may exist. While it is true that disputed facts of a technical nature should be disposed of before trial by deposition, that rule has no application here. The assignments and powers of attorney are valid on their face. If they were obtained by fraud and if that is a defense that is available to defendant, it is a matter of affirmative defense to be brought up at trial. Defendant does not even hint that any of the assignments are not valid, but through this objection seeks to impose an additional burden on plaintiff.

Through the seventh preliminary objection, defendant contends that plaintiff is without legal capacity to sue because the assignments cover reparations under a commission order other than the one upon which his action is based. Two of the assignments refer to overcharges made in excess of the order of October 6, 1930, and the third refers to that order and the order of January 3, 1940. The suit is brought to recover the reparations declared due by the Pennsylvania Public Utility Commission order of October 1, 1945.

On its face defendant's contention may appear to be sound, but it must be kept in mind that the order of

October 1, 1945, merely lists the patrons entitled to reparations and the amount due each. It is but a supplement to the order of January 3, 1940, which determined that reparations were payable for a certain period.

Both orders result from the commencement of the action by plaintiff on October 17, 1935, to recover overcharges made under the tariff effective July 1, 1931, the tariff put into effect to produce the revenue allowed by the order of October 6, 1930. This order did more than prescribe the gross revenue to be charged. It broke down this gross to provide a net income of $12,950 (seven percent on the investment), operating charges of $21,290, and a depreciation allowance of $1,900. In computing the operating charges, there was a $3,000 overestimate. As a result the net return to the company was increased by $3,000, since no rate deduction was made. In 1932 the net return exceeded that allowed by the Pennsylvania Public Utility Commission by more than 35 percent. That is a definite indication of overcharging.

While it is true that no court has ever said that the rates were in excess of the order of October 6, 1930, that is only because no court has been called upon to decide that question. The rate structure and net return provisions of the order of October 6, 1930, cannot be considered separately. The rates prescribed were allowed for the purpose of paying expenses and yielding a certain return. The fact that the return was too high indicates that the rates were too high. Any system of rates which would have produced a return greatly in excess of $12,950 would have been in excess of the Pennsylvania Public Utility Commission order of October 6, 1930. The commission in its order of January 3, 1940, pointed out "the rates and charges under respondent's Tariff Pa. P. U. C. No. 4 and supplements were unreasonable, oppressive and extortion-

ate . . .". These were the tariffs put into effect to yield the net return provided for by the order of October 6, 1930.

Therefore, defendant's position cannot be sustained. The reparations were ordered because the company had received an amount greater than that permitted by the order of October 6, 1930. It is the right to these reparations upon which this suit is based and the other orders of the commission merely direct the company to make the payments. Thus it is entirely proper that plaintiff sue as assignee of the rights to collect overcharges made in excess of the order of October 6, 1930.

And now, January 26, 1949, for the foregoing reasons, defendant's preliminary objections are overruled and defendant shall have the right to plead over within 20 days from this date.