[Filed November 17, 1890.]

## THE THOMPSON–HOUSTON ELECTRIC COMPANY
### *v.* S. SIMON.

Common Carriers—How Classified.—Common carriers are classified as carriers of goods and carriers of passengers, because their employment is *quasi* public, and

the public have an interest in the faithful performance of their duties.

CONDEMNATION OF LANDS—WHAT CORPORATIONS MAY NOT.—The provisions of the statute for the condemnation of a right of way have little or no reference to corporations operated as street railways propelled by electricity or horse-power for local convenience and the transportation of passengers, and do not authorize such to condemn private property for a right of way.

Multnomah county: E. D. Shattuck, Judge.

Plaintiff appeals.   Affirmed.

*Dolph, Bellinger, Mallory & Simon,* for Appellant.

Hill's Code, § 3239, provides that "A corporation organized for the construction of any railway" may appropriate land for right of way, and this applies to street railways operated for carrying passengers only.  (*Chicago* v. *Evans,* 24 Ill. 52; 3 Mo. App. 559; *In re* Mt. Washington Road Co. 35 N. H. 134; *Higginson* v. *Nahant,* 11 Allen, 530; Lewis on Eminent Domain, § 161.)

*Stott, Boise & Stott,* for Respondent.

The right to exercise the power of eminent domain is a prerogative franchise and can be obtained only from the sovereign power.  (Wood's Railways, § 13.)

The legislature may delegate this sovereign power. (Lewis Eminent Domain, §§ 240–2.)

"Statutes delegating the right of eminent domain to railroad and other corporation for public use being derogation of common right are not to be extended by implication." (Wood's Railways, § 224.)

Lord, J.—This is an action to condemn a right of way for a street and suburban railway operated for the carrying of passengers.   A demurrer was filed to the complaint, which was sustained by the court below; and the plaintiff refusing to proceed, judgment was rendered therein, from which this appeal is taken.   The contention of the plaintiff is, that our statute authorizing the condemnation of land for a right of way contemplates the exercise of such power as much by street and suburban railways propelled by horse-power or electricity as railroads where cars are propelled by steam. The argument is, that section 3239, Hill's Code, which provides that "a corporation organized for the construction of any railway" may appropriate land for a right of way by

the use of the phrase "any railway" *ex vi termini* includes street and suburban railway corporations organized to trans‑ port passengers only and propelled by horse-power or elec‑ tricity, as well as railroads authorized to transport passen‑ gers and freight and propelled by steam; that the terms of the statute, viewed as a whole, indicate and import that it was intended to authorize railway corporations to condemn lands for the use of their road, whether they were organ‑ ized to carry passengers or freight or both or whether they were propelled by steam or other power. To strengthen the construction, that it is not necessary that the railway corpo‑ ration, however propelled, should be formed to carry passen‑ gers and freight to entitle it to exercise the power of emi‑ ment domain and condemn lands for its use, the language of section 3236 is relied upon as showing that this distinc‑ tion is not observed with reference to navigation corpora‑ tions authorized to construct portage railways, wherein it reads "for the purposes of transporting freight *or* passengers across any portage on the line of such navigation," "in like manner and with like effect as if such corporation had been formed for such purpose." To this it is answered that every railway corporation for the construction of a railroad under the statute for the condemnation of lands, is a common car‑ rier, and that such a statute being in derogation of common right, is not to be extended by implication. Section 3254 of the statute, authorizing the condemnation of land for a right of way, provides: "Every corporation formed under this chapter for the construction of a railway, as to such road shall be deemed common carriers and shall be entitled to collect and receive a just compensation for transportation of persons or property over such road." The argument is, that as a common carrier is a carrier of goods for hire, and while a common carrier may carry passengers and combine the two employments of carrying goods and passen‑ gers, as is almost universally done by railroads, yet as a corporation for the construction of a railway it cannot be deemed a common carrier unless it is formed to carry goods

and passengers; that the legislature in delegating the right of eminent domain intended only that such railroads should be entitled to exercise it as were common carriers of freight and passengers; hence, a corporation could not exercise the right of eminent domain in the construction of a railway organized to transport passengers only and not freight. Much of this argument is bas, ¹ on the technical definition of a common carrier, as one who undertakes for hire to transport the goods of such as choose to employ him from place to place; so that before a corporation can be deemed a common carrier it must of necessity include in its business the transportation of goods or freight from place to place. There is usually in a railway act some sections which have the effect of putting the railway company on the footing of common carriers. (2 Rob. Pr. 534.) But whether made so by general statute or by their charters, railroad companies are held to be common carriers. (2 Am. & Eng. Ency. 781.) And it is said when they are made so by the express provision of a statute, such provision will be merely declaratory of the law as it already existed. (Huthinson on Carriers, § 67.) A common carrier is such because his duties partake of a public character. "To bring a person," says Judge STORY, "within the description of a common carrier, he must exercise it as a public employment; he must undertake to carry goods for persons generally, and must hold himself out as ready to engage in the transportation of goods for hire, as a business, and not as a casual occupation *pro hac vice*." (Story on Bail. § 495.) To constitute one, then, a common carrier, it is necessary that he should hold himself out as such. A carrier of passengers who undertakes to carry all persons who apply to him for transportation, is engaged in a public employment and is a public or common carrier of passengers.

"A common carrier of passengers," says Judge THOMPSON, "is one who undertakes for hire to carry all persons indifferently who may apply for passage. Railroad companies, the owners of ships, ferries, omnibuses, street cars and stage

coaches are usually common carriers of passengers." (Thompson on Carriers of Passengers, 26, note 1.)

It is true that carriers of passengers are not common carriers as to the persons of those whom they carry. But common carriers are classified as carriers of goods and as carriers of passengers. The reason is their employment is *quasi* public, and the public have an interest in the faithful discharge of their duties. "Every common carrier," said MULKEY, J., "has the right to determine what particular line of business he will follow. If he elects to carry freight only, he will be under no obligation to carry passengers, and *vice versa*. So if he holds himself out as a carrier of a particular kind of freight, or of freight generally, prepared for carriage in a particular way, he will only be bound to carry to the extent and in the manner proposed. He will, nevertheless, be a common carrier." (*Railroad Co.* v. *Ferry Co.* 107 Ill. 451.) A common carrier, then, may be either a carrier of passengers or freight or both. The argument then, that the plaintiff is not the kind of a corporation authorized to exercise the power of eminent domain because it is only a carrier of passengers and not of freight, would not deprive the plaintiff of its character as a common carrier, and as such to be deemed within the statute. This would result in giving to the statute a construction which would include both classes of carriers, but not necessarily that such carriers should combine both employments; it might be engaged in carrying passengers or freight or both, and still be deemed a common carrier.

But it is apprehended that the safer way to determine whether the word "railway" or "common carrier," as used in the statute, is to be confined to railroads operated by steam or railroads operated by other power, such as street railways, is to look at the context and intent, and in that way ascertain whether the plaintiff is such corporation organized for the construction of a railway as is contemplated by the statute to be invested with the power to condemn lands for the use of its road. While it is true that

the word "railway" may include railroads operated by steam as well as those whose cars are propelled by some other power, yet it is common knowledge that such corporations as belong to the latter class are usually operated as street railways for local convenience. The plaintiff is an electric company, and as such, we know, belongs to the class of corporations operated as street railways for the benefit of the local public. It was so understood at the argument, and the action is described as one to condemn a right of way for a street and suburban railway for the carrying of passengers. I take it, then, that we are to consider the plaintiff as belonging to this class, in determining whether it is such a corporation for the construction of a railway as is intended by the statute to be invested with the power to exercise the right of eminent domain. The statute provides (§ 3239) that "a corporation organized for the construction of any railway," etc. (§ 3240), "may appropriate so much of said land as may be necessary for the line of such road, not exceeding sixty feet in width, besides a sufficient quantity for workshops," etc.; "and in case of a railway, a sufficient quantity of such land in addition to that before specified in this section for the necessary side-tracks, depots, water stations, cuttings, embankments," etc.; "and such railway company shall have the right to cut down any standing timber in danger of falling upon its road," etc.; "may cross, intersect, join and unite with any other railway," etc.; "and may make the necessary turnouts, sidings, switches, and other conveniences," etc. (§ 3246); and "all streams and other waters on the line of such roads shall be safely and securely bridged, except," etc.; and (§ 3254) "every corporation formed under this act for the construction of a railroad as to such road shall be deemed a common carrier," etc. Few, if any, of these provisions have any reference to the class of corporations to which the plaintiff belongs, and was scarcely intended to apply to them. They contemplate and authorize a railway to be constructed where none was built before, through the country, requiring bridges, cuttings,

XX OR.—5.

fillings and embankments, and sometimes tunnels through hills and mountains, and also the building of depots and stations for the accommodation of freight and passengers, of engine houses, repair shops, switches and turnouts, to enable the corporation to properly conduct its business.

A railroad corporation which must avail itself of the benefit of such a law to enable it to do these manifold things to build its railway and put it in operation, may well be considered from the public nature of its employment and the interest the public has in the proper conduct of its business as a "common carrier" without a legislative declaration that it shall be deemed such. But it is plain that the provisions of such a law can have little or no reference to corporations organized and operated as street railways, propelled by electricity or horse-power and intended to accommodate local convenience for the transportation of passengers. They contemplate a track laid upon an established street or highway, and are usually restricted to the bounds of the city, its vicinity, or adjacent towns, and generally derive their authority to lay their tracks upon such streets or highways from the municipality or county, and their construction is regarded by many adjudications as a legitimate use of such streets and highways, and an exercise of the right of public travel. This distinction as to the uses and purposes of each of such class of corporations is thus stated in *Railway Co.* v. *City Railway Co.* 2 Dur. 178, by ROBERTSON, J.: "A railroad is for the use of the universal public in the transportation of all persons, baggage and other freight; a street railway is dedicated to the more limited use of the local public for the more transient transportation of persons only and within the limits of the city. In the technical sense, therefore, a street railway is not a railroad." It is not enough that a railway is for a public use to authorize the taking of private property, but the taking must be for a public use within the scope of its undertaking and the object which it is to subserve.

To authorize railroads operated for such purposes to take

the private property of the citizen and appropriate it to its use without his consent, the statutory authority for it must be plainly given; otherwise the right does not exist.

In view of these considerations, we do not think the provisions of the statute for the condemnation of a right of way applies to the plaintiff, so as to authorize it to take private property without the consent of the owner for its own use as a right of way.

It follows that the judgment must be affirmed.

On rehearing.

LORD, J.—Further consideration of our statute for the condemnation of a right of way by a railroad, strengthens the conviction that it does not extend to or contemplate the business class of railways to which the plaintiff belongs. Few, if any, of its provisions have any reference or application to it as such. Nor has any authority been cited or argument suggested, other than that the word "railroad" may include railways operated by steam or other power to give it a different construction. In preference to construing the statute by this method, we thought the safer way to ascertain what the legislature intended was, as SHAW, C. J., in *Cleveland* v. *Norton*, 6 Cush. 380, "to take the entire provisions of the act and ascertain, if possible, what the legislature intended." From that point of view, we thought it contemplated a railroad in the larger sense, and such as is considered a highway for travel and traffic, with its necessary adjuncts, and that it was to such railroads that the provisions had reference and come within the design of the legislative grant, conferring on such the right of eminent domain for the various things specified as indispensable to effect the purposes of its organization and essential to carry on its business. Nor do we find that the authorities differ with us in this regard. Referring to some of the things which must be regarded as among the acknowledged necessities for operating such a railroad, LE ALLEN, J., said *In re N. Y. & H. R. R. Co.* v. *Kip et al.* 46 N. Y. 552: "But passenger depots, convenient and proper places for storing and

keeping cars and locomotives when not in use; proper, secure and convenient places, having reference to the public interests to be subserved for the receipt and delivery of freight, and for the safe and secure keeping of property between the time of its receipt and dispatch or after its arrival and discharge and before its removal by the owner or consignee, are among the acknowledged necessities for the running and operating the railroad to the proper prosecution of the business in the interests of the public.    This may be regarded as indispensable to the accomplishment of the general purposes of the corporation and the design of the legislative grant." In *State ex rel. Railroad Co.* v. *R. R. Co.* 56 Conn. 312, 313, CARPENTER, J., said: "Depots for passengers and freight are essential parts of a railroad," and that "a railroad is incomplete without them." In speaking of the constitutional power of the legislature to authorize the taking of lands for the construction and operation of railroads, under the statutes of that state, LIBBY, J., said: "It rests upon the proposition, now well established, that railroads are public highways, the great thoroughfares for public travel and commerce." (*Spofford* v. *Railroad Co.* 66 Me. 39.)

In a note in Am. & Eng. R. Cases, p. 52, referring to Mr. Justice HARLAM's summing up of the legal status of railroads as public highways for travel and traffic, etc., the writer says: "Whence it may be concluded and these conclusions are sustained by authority that (1) railways are *quasi* public corporations, created for the purpose of conducting the business of common carriers of passengers and property upon their lines of railway and for no other purpose. (2) As such they are engaged in a public service."

From the point of view that railroads are highways for public travel and commerce, it is indispensable to the accomplishment of the purposes of their organization that they should have depots for passengers and freight and all the adjuncts necessary and essential to carry on their business. By looking at the entire provisions of our statute we find all these matters provided for, and within the design of the

legislative grant, whence we conclude that our statute con-
templated a railway in this larger or comprehensive sense
and intended to confer the power of eminent domain on·
such as are highways for the carriage of passengers and
freight, and not the class of railways engaged in the business
to which the plaintiff belongs.

Our conclusion is that the motion must be denied.