MASSACHUSETTS LOAN & TRUST CO. et al. v. HAMILTON.

(Circuit Court of Appeals, Ninth Circuit. May 3, 1898.)

No. 424.

1. CONSTRUCTION OF STATUTES—MEANING OF "RAILROAD."

The word "railroad" has no such fixed definition as to enable a court to determine whether, by its mere use in a statute, it applies to street railways or not. It may be used in its broad sense, which includes a street railroad, and any other kind of road on which rails of iron are laid for the wheels of cars to run upon, whether propelled by steam, electricity, horse, or other power, or it may be used in its technical sense, which does not apply to street railroads.

2. RULE OF CONSTRUCTION.

As a general rule, statutes are presumed to use words in their popular sense; but the safest rule of construction is to take the entire provisions of the statute, and thereby ascertain, if possible, what the legislature intended. The meaning must depend upon the context, and be ascertained

from the occasion and necessity of the law, the mischief felt, and the object and remedy in view.

**3. SAME.**

The difference between street railroads and railroads of commerce for general traffic consists in their use, and not in their motive power.

**4. SAME.**

The words "railroad" and "railway" are synonymous, and, under all ordinary circumstances, are to be treated as without distinction of meaning.

**5. SAME—JUDGMENTS FOR PERSONAL INJURIES—PRIORITY OF LIEN.**

The Montana statute which provides that a judgment against "any railway corporation" for any injury to person or property, or for material furnished, etc., shall be a lien, within the county where recovered, superior to the lien of any mortgage or trust deed on the railroad property (Comp. St. 1887, div. 5, § 707), being construed in connection with other provisions of the same statute (which plainly refer only to the railroads of commerce), does not include street railroads.

Appeal from the Circuit Court of the United States for the District of Montana.

Ransom Cooper and McConnell, Clayberg & Gunn, for appellants. Edwin W. Toole, Thos. C. Bach, and Jos. K. Toole, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge.    Appellee, in an action against the Great Falls Street-Railway Company to recover damages for personal injuries received, obtained a judgment for $7,500, with costs, and brings this suit in equity to enforce the judgment lien against appellants, as a prior and superior claim and lien, upon the property of the street-railway company, to the mortgage lien and claim of the Massachusetts Loan & Trust Company.    Whether a judgment rendered against a street-railway corporation for personal injuries has priority over the lien of a mortgage upon the corporate property depends upon the interpretation to be given to the provisions of section 707 of the fifth division of the Compiled Statutes of Montana of 1887, which reads as follows:

"A judgment against any railway corporation for any injury to person or property, or for material furnished, or work or labor done upon any of the property of such corporation, shall be a lien within the county where recovered on the property of such corporation, and such lien shall be prior and superior to the lien of any mortgage or trust deed provided for in this act."

Does this section apply to street railroads?    Was it the intention of the legislature, at the time of the adoption of this section, that it should apply to all railroad corporations within the state,—to street railroads, as well as to commercial and steam railroads, operated by means of locomotives and cars, for the transportation of passengers and freight?    Is there anything in the laws of Montana which sheds any light upon the question of the intent of the legislature?    If not, how is the intent to be ascertained?    What do the authorities say upon this subject?

In May, 1873, the legislature of the territory of Montana passed "An act to provide for the formation of railroad corporations in the territory of Montana" (St. Mont. 1873, p. 93).    The provisions of this act are general in their character, and are all specially applicable to

steam railroads.    At the time of the passage of this act there were no railroads of any kind within the territory.    In 1887 the legislature of the territory passed "An act in relation to railroads," consisting of six sections, which, in the Compiled Statutes of Montana, is treated as a supplement to the railroad act of 1873, and numbered sections 702 to 707; the last section, heretofore quoted, being the one under consideration.    Sections 702 to and including 706 are specially applicable to steam and commercial railroads.    At the time of the passage of this act there were no street railways within the territory of Montana, but at the same session (1887) the legislature passed an act providing for municipalities licensing and authorizing the construction of street railroads.    Section 325 of the municipal act provides, among other things, that "the city council of all cities incorporated under this act shall have the following powers" (subdivision 14):    "To regulate and control the laying of railroad tracks and prohibiting the use of engines and locomotives propelled by steam or to regulate the speed thereof when used;" (subdivision 16) "to license and authorize the construction and operation of street railroads and require them to conform to the grade of the streets as the same are or may be established."    The legislature of Montana in 1893 passed an act, approved March 2, 1893, extending the provisions of chapter 36 of the Compiled Laws of 1887, relating to the conditional sale of railroad equipments, to street-railway equipments. This act was entitled "An act relating to certain contracts for the conditional sale, lease or hire of railroads and street railway equipments and rolling stock, and providing for the recording thereof."    Section 393 of the Civil Code of 1895 provides, "The purposes for which the private corporations mentioned in the last section are" (subdivision 15) "the construction and maintenance of a railroad and of a telegraph line in connection therewith and a street railroad of any kind." The constitution of Montana (section 12, art. 15) declares that "no street or other railroad shall be constructed within any city or town without the consent of the local authorities," etc.

But little is gained by a reference solely to the meaning of the word "railroad."    The word, of itself, has no such fixed definition as to enable the court to determine whether, by its mere use in a statute, it applies to street railways or not.    It may or may not include them. It may be used in the statute in its broadest sense, or it may be used in its technical or popular sense.    19 Am. & Eng. Enc. Law, 777 et seq.; Bishop v. North, 11 Mees. & W. 418; Lieberman v. Railway Co., 141 Ill. 140, 147, 30 N. E. 544; Bloxham v. Railroad Co., 36 Fla. 519, 539, 18 South. 444; Funk v. Railroad Co. (Minn.) 63 N. W. 1099.    In its broadest sense, it undoubtedly includes a street railroad, and every other kind of a road or way on which rails of iron are laid for the wheels of cars to run upon, whether propelled by steam, electricity, horse, or other power, carrying light or heavy loads of freight or passengers, or both.    2 Bouv. Law Dict. tit. "Railroads."    In its technical sense it does not apply to street railroads.    Louisville & P. R. Co. v. Louisville City Ry. Co., 2 Duv. 175; Ror. R. R. 1422; Elliott, Roads & S. 558.

It may be, as counsel for appellee claim, that searching for legislative intent is often like "hunting for a needle in a haystack"; but it is nevertheless the duty of courts to make the search by applying the usual magnets of construction, and drawing therefrom, through the ordinary channels of thought, such intent.    There is no other way to determine the question, and the fact that it is difficult simply makes it more necessary that a thorough search be made.    If there is any doubt about the true meaning of the word or term used in a statute, the legislative intent is not to be determined from that particular expression, but from the general legislation of the state concerning the same subject-matter.    It may in some connections have a broad and comprehensive meaning, and in others a narrow and limited meaning. As a general rule, statutes are presumed to use words in their popular sense, and courts often apply this rule in order to arrive at the object and intent of the legislature.    End. Interp. St. § 76.    But in all cases the safest rule is to take the entire provisions of the statute where it is used, and thereby ascertain, if possible, what the legislature intended.    The meaning of the word must always depend upon the context and the legislative intent of the statute in which it is used, from the occasion and necessity of the law, from the mischief felt, and the object and remedy in view.    Potter's Dwar. St. 194, note 13.  Following these, or other similar, rules of construction, the courts have in many instances held that the word "railroad" does in certain statutes include street as well as steam railroads, and in others that it refers only to the railroads of commerce.    No particular stress should be given to the difference in the motive power of the respective roads. The difference between street railroads and railroads of commerce for general traffic is well understood.    The difference consists in their use, and not in their motive power.    A railroad, the rails of which are laid to conform to the grade and surface of the street, and which is otherwise constructed so that the public is not excluded from any part of the street as a public way; which runs at a moderate rate of speed, compared to the speed of traffic railroads; which carries no freight, but only passengers from one part of a thickly popu lated district to another, in a town or city and its suburbs, and for that purpose runs its cars at short intervals, stopping at the street crossings to receive and discharge its passengers,—is a street railroad, whether the cars are propelled by animal or mechanical power. Williams v. Railway Co., 41 Fed. 556.    The railroads of commerce derive their powers from, and are governed by, national or state legislation.    The street railways are regulated and controlled, principally, by municipal laws.    It has been held that street-railway companies are "railroad corporations," within the meaning of "An act to enforce against railroad corporations" certain provisions of the state constitution, where such constitutional provisions include all corporations organized for business in its prohibition, and no words are used in the body of the act which were intended, or could fairly be used, as making any distinction between steam and other railroads, and where it is apparent that both street railroads and steam railroads are within the mischiefs recited in the preamble or other

parts of the act, and within the remedies provided for in the act. Cheetham v. McCormick, 178 Pa. St. 187, 191, 35 Atl. 631. In Tennessee it is held that an act relating to railroads, which requires certain precautions to be used in the movement of trains in the city of Memphis, is applicable to a dummy train of street cars. Katzenberger v. Lawo, 90 Tenn. 235, 16 S. W. 611. And in Ohio, that a statute giving a lien to mechanics, laborers, etc., for work done upon "any railroad, turnpike, plank road, canal or any public structure," applies to street railroads. New England Engineering Co. v. Oakwood St. Ry. Co., 75 Fed. 162.

The words "railroad" and "railway" are synonymous, and, under all ordinary circumstances, they are to be treated as without distinction in meaning. As said by Mr. Justice Green in Gyger v. Railway Co., 136 Pa. St. 96, 104, 20 Atl. 399:

"When either one or the other of these words is used in a statute, and the context requires that a particular kind of road is intended, that kind of a road will be held to be the subject of the statutory provision; but if the context contains no such indications, and either of the words is used in describing the subject-matter, the statute will be held applicable to every species of road which is embraced within the general sense of the word used." Hestonville, M. & F. Pass. R. Co. v. City of Philadelphia, 89 Pa. St. 210; Borough of Millvale v. Evergreen Railway Co., 131 Pa. St. 1, 18 Atl. 993; Rafferty v. Traction Co., 147 Pa. St. 579, 589, 23 Atl. 884.

A corporation with authority to construct, complete, and operate a railroad is none the less a railroad corporation, within the statute authorizing municipal subscriptions to railroad companies, because it is also a coal or a mining or a furnace or a manufacturing company. Randolph Co. v. Post, 93 U. S. 502, 511; Improvement Co. v. Slack, 100 U. S. 648, 659.

In Electric Co. v. Simon, 20 Or. 60, 65, 25 Pac. 147, 148, the contention of the plaintiff was that the statute of Oregon, which, among other things, provides that "a corporation organized for the construction of any railway" might condemn land for a right of way and other specified purposes, contemplates the exercise of such power as much by street and suburban railways propelled by horse power or electricity as railroads where cars are propelled by steam. The court, after reviewing the various provisions of the statute, specifying the objects and purposes for which land might be taken by railroad corporations, held that it did not apply to the street railway, so as to authorize it to take private property, without the consent of the owner, for its own use as a right of way. In the course of the opinion the court said:

"While it is true that the word 'railway' may include railroads operated by steam, as well as those whose cars are propelled by some other power, yet it is common knowledge that such corporations as belong to the latter class are usually operated as street railways for local convenience. The plaintiff is an electric company, and as such, we know, belongs to the class of corporations operated as street railways for the benefit of the local public."

After quoting several provisions of the statute, the court said:

"Few, if any, of these provisions have any reference to the class of corporations to which the plaintiff belongs, and was scarcely intended to apply to them. They contemplate and authorize a railway to be constructed where none was built before, through the country; requiring bridges, cuttings, fill

ings, and embankments, and sometimes tunnels through hills and mountains, and also the building of depots and stations for the accommodation of freight and passengers, of engine houses, repair shops, switches, and turnouts, to enable the corporation to properly conduct its business."

These authorities show the necessity that exists for the courts, in all cases, to look carefully to the statute itself, in connection with the history of the times, and the contemporaneous legislation, in order to discover in what sense the word "railroad" is used, or to ascertain what particular kind of a railroad the legislature intended should come within its provisions. The general railroad act of 1873 may be said to have reference only to the railroads of commerce, and it is fair to presume that the legislature did not then have in mind the construction of street railways, although sections 1, 2, and 3, authorizing the formation and incorporation of railroad corporations, are broad enough to include corporations for the construction and maintenance of street railways.

In Oler v. Railroad Co., 41 Md. 583, 589, objection was made to the certificate of incorporation for a horse-railroad company on the ground that the provisions of the act of 1870, under which it was organized, referred to roads similar to those alone upon which steam is used as the motive power. The court said:

"We do not see why so limited a construction should be put upon this law. It would be against both its spirit and letter. The term 'railroad' is used without qualification or restriction, and we have found nowhere—either in the preamble or body of the law—any allusion to the motive power used, as limiting its ordinary meaning or making a distinctive class. It is very true that many of the special requirements contained in the law are applicable only to railroads of the character of those upon which steam is now used. Had they not been made parts of the law, it might have furnished an argument, that would not have been without weight, that such roads were intended to be excluded from its operation; but we do not understand that their being in the law can furnish any sound reason for the exclusion of other classes of railroads, when the language of its general provisions, as is the case with the law before us, is broad enough to embrace them."

See, also, City of Chicago v. Evans, 24 Ill. 52; City of Clinton v. Clinton & Lyons Horse Ry. Co., 37 Iowa, 61; New York Cable Co. v. Mayor, etc., of New York, 104 N. Y. 1, 10 N. E. 332; Lieberman v. Railroad Co., supra.

In New York, from 1850 to 1884, all street railroads were incorporated under the general steam railroad act. Cook, Stock, Stockh. & Corp. Law, § 912, and authorities there cited. But no question is here presented whether street railways can be incorporated under the provisions of the railroad act. The street-railway company in this case was not organized under the general railroad act of Montana. It is a corporation organized and existing under and by virtue of the laws of the state of New Jersey. The supplemental act passed in 1887 "in relation to railroads" does not mention street railways, and all its provisions, independent of the section under consideration, are specially applicable to the railroads of commerce. Street railways were then in contemplation in the minds of the members of the legislature, for at the same session an act was passed giving to all incorporated cities the power to license and authorize the construction and operation of street railroads. What significance,

if any, should be given to these facts? Is it not shown, from all this legislation, including section 12 of article 15 of the state constitution, that the legislature of Montana regarded railroads and street railroads as being different in their character? Is it not fair to infer that when the term "railroad" is alone mentioned the act refers only to the railroads of commerce, and is not this inference strengthened by the fact that when "street railways" are clearly intended to be embraced in the provisions of the act the prefix "street" is used in order to specially designate the kind and character of railroad to which the law is intended to apply? We are of opinion that this act, in all of its provisions, was intended by the legislature to apply only to the railroads of commerce. This conclusion is supported by a careful consideration of each of the six sections, and the evident object and purpose of all their provisions. The first section (Comp. St. Mont. 1887, § 702) provides that "any railroad corporation chartered by or organized under the laws of the United States, or of any state or territory whose line of railroad shall reach or intersect the boundary line of the territory at any point, may extend its railroad into this territory from any point or points to any place or places within the territory, and may build branches from any point of such extension or continuation of any such extension or branch," and then directs what shall be done by the corporation before making such extension, etc. This is manifestly applicable only to the railroads of commerce, and has no application whatever to street railways. The same can be said of the second section (703), providing that "any two or more railroad corporations whose respective lines * * * are wholly or partly within this territory" may, in certain cases, be operated together as one property, and their stock, franchise, and property consolidated so as to become one corporation, etc. Then follows the third section (704), which provides that "any railroad corporation whose line is wholly or partly within this territory, or reaches the boundary line thereof, * * * may lease or purchase the whole or any part of the railroad or line of railroad of any other railroad corporation," together with the rights, powers, privileges, and franchises pertaining thereto. These sections furnish the earmarks that show plainly what character of railroad the legislature had in view at the time of the passage of the act. Section 5 (706) starts off with the proviso that "any railroad corporation whose line is wholly or partly within this territory, whether chartered by or organized under the laws of this territory or of the United States or of any other state or territory, shall have authority and power to make, issue, negotiate and deliver its bonds, securities or obligations, * * * execute and deliver such mortgages or deeds of trust upon any or all of its property" as the board of directors may determine or direct, and provides that the record of such mortgages or deeds of trust in the office of the secretary of the territory shall be notice of their existence and contents to all parties whomsoever, without any further record. Admitting, for the sake of argument, that some provisions of this section might be applicable to street railways, if they were alluded to or mentioned in the act, it is apparent from the object, scope, and effect of the previous sections, and the language at the head of the provisions

in this section, that the legislative mind was directed solely to the character of railroads operated by steam for the purpose of the general traffic of carrying freight and passengers, and herein designated as the "railroads of commerce," as distinguished from street railways in the cities and towns for the convenience of passengers only.

This brings us to the sixth section (707),—the one under consideration. It is true that the words, "a judgment against any railway corporation for any injury to person or property," if taken by themselves, without reference to the language in the latter part of the section, which provides that "such lien shall be prior and superior to the lien of any mortgage or trust deed provided for in this act," or to the language of the previous sections, are broad enough to apply to all kinds of railways. But the judicial mind must draw its inspiration from the language of the entire act, its declared object and purpose, the mischiefs, if any, that it was intended to prevent, and the special powers and remedies it was intended to give. In the passage of this particular section the legislature seems to have had in mind the thought that the railroads with the "iron horse," extending through various counties of the state, in regard to which all the previous sections had special reference, ought to be subject to some distinctive legislation in order to protect the class of people for whose special benefit this provision was inserted. It is a matter of common knowledge that there are many more judgments obtained in favor of parties who have been injured in their persons or property against the railroads of commerce than against the local street railways in the cities, because of the greater risks and hazards. The same is true of the other class of judgments. Moreover, such railroads often commence the construction and operation of their roads by executing and recording a blanket mortgage or deed of trust covering all the property they then had or might at any time thereafter acquire, thus making it difficult for people who are injured in their person or property, or those who have furnished supplies or performed labor for the railroad corporation, to obtain their just demands; and hence it was deemed proper, if not necessary, to pass such a law, as a protective measure. If it can be said that such persons also needed protection from street-railway corporations, the answer is that, if the legislature so thought, it was its duty—as in the passage of other acts at the same session— to have included street railways within the terms of the section. We have no power to insert "street railways" into this section of the act, with the knowledge we have that all the other provisions of the act refer in clear, plain, and unequivocal terms to other kinds of railways or railroads. Especially is this true when we find acts passed at the same session where the word "street" is used as a prefix to the word "railway" or "railroads" in all acts intended to apply to street railroads. It is true that the courts may in certain cases impute a legislative intent not expressed with perfect clearness, where the words used import such intent, either necessarily or by a plain and manifest implication. But it would be a dangerous exercise of judicial authority, not to be justified by any consideration, for a court to declare a law by the imputation of intent, when the words used do not import it, either necessarily or by plain implication, and when all

the surroundings of the enactment clearly show that the construction claimed could not have been within the legislative thought. Suth. St. Const. § 433. It cannot reasonably be said that the words "railroad corporations" are used in the statute "without qualification or restriction," when the language used in the various provisions of the act clearly indicates the kind of railroads the legislature had in view.

In Funk v. Railway Co. (Minn.) 63 N. W. 1099, it was held that chapter 13, Gen. Laws 1887, which provided that "every railroad corporation owning or operating a railroad in this state shall be liable for all damages sustained by any agent or servant thereof by reason of the negligence of any other agent or servant thereof without contributory negligence on his part when sustained in this state," is not applicable to a street-railway corporation. The reasons given for the conclusions reached are in some respects specially applicable to this case. The court, among other things, said:

"But if we assume that at the time of the passage of the law of 1887 the history of street cars was generally known, and their use, method of operation, and dangers therefrom well understood, can it be fairly and reasonably held that it was the legislative intent to apply the term 'railroad' to street railways? It is a matter of common knowledge that street cars operated by cable or electricity are more readily managed than those operated by steam, where long passenger and freight trains, with their weight and momentum, are not so easily controlled. Street cars are generally run separately, rarely with more than two or three coupled together, and there is but little danger of collision. They do not run so rapidly, their movements are easily and quickly checked, and the roadbeds are constructed upon level or graded streets, without deep cuts, and generally lighted. Nor do street railways carry freight. The greatest railroad hazard, and danger of personal injury to railroad employés, arises from operating freight trains. There is no such danger in operating street railways, whatever may be the motive power, because they do not carry freight. Especially is the danger in coupling freight cars entirely absent. They get their business from the street, usually in populous cities, where passenger travel is the only business carried on. Street cars do not usually run beyond the city limits, and none beyond the state boundary. The words in the law of 1887 making a railroad corporation operating a railroad in this state liable for damages 'when sustained within this state' were undoubtedly aimed at the railroads operated by steam, where their lines extended beyond the jurisdiction of the state. It is true these restrictive words would include railroads operated by steam wholly within the state, but they were inserted to prevent the bringing of suits where the injury was sustained upon railroads outside of this state, but where the lines of the same railroad come within the boundary of our own state. Hence the words, 'when sustained within this state,' evidently refer to railroads operated by locomotives, and it was such railroads the legislature had in contemplation when this term was used. Through our territorial and state legislation, the term 'railroad' has acquired a definite and well-understood meaning, and it has never been understood to include street railways. It is usually applied to the ordinary steam railroad of commerce, and, when there has been legislation in regard to street railways, they have been so designated. * * * If we were to hold that the term 'railroad' in the law of 1887 applied to street railways because the word is broad enough to cover all roads constructed of iron or steel rails for wheels of cars to run upon, we see no reason why it should not be so construed whenever found in the other legislation of this state. This would require street railways to build depots and waiting rooms for passengers, for there is just as much reason to make the word 'railroad' applicable in this respect as to personal injury cases. This is but one of the very many instances where by the use of the word 'railroad' the company is required to perform certain duties, in respect to which it cannot reasonably be said that

the meaning of such words includes street railways. To so construe it in such instances would lead to confusion, and be a palpable violation of the legislative intent."

Mitchell, J., in a concurring opinion, said:

"But according to common popular usage the word 'railroad,' without any qualifying or explanatory prefix, is generally understood as referring exclusively to ordinary commercial railroads, used for the transportation of both passengers and freight, and whenever street railroads are referred to the word 'street' is prefixed. This is also the general legislative use of the words. In all the legislation of this state I have found no act (unless this be an exception) in which the word 'railroad' or 'railway,' standing alone, was not evidently intended to apply exclusively to ordinary commercial railroads. Neither have I found an act (unless this be an exception) which had reference to street railroads in which the word 'street' was not prefixed. I do not claim that there might not be a law enacted where it would be evident, from its subject-matter and object, that the word 'railroad' was intended to include street railroads. But in my opinion this is clearly not such a case. The occasion for enacting this law was the peculiar risks incident to the operation of railroads, and especially those resulting from the negligence of fellow servants. The remedy sought to be attained was better protection to railroad employés from these peculiar hazards. * * * The question is not whether the legislature had the power to place street railroads in the same class with ordinary commercial railroads, but whether they have in fact done so. The difference in conditions affecting the risks to which employés are exposed is sufficiently substantial to authorize the legislature to make the law applicable to ordinary commercial railroads alone, and furnishes, in my judgment, ample reason for concluding that they so intended, and that they used the word 'railroad' in its ordinary popular sense, and in the sense in which they themselves had generally used it in other statutes." Riley v. Railroad Co. (Tex. Civ. App.) 35 S. W. 826; Railway Co. v. Johnson (Wash.) 25 Pac. 1084; Sears v. Railway Co., 65 Iowa, 742, 744, 23 N. W. 150.

The direct question here involved was presented in Manhattan Trust Co. v. Sioux City Cable Ry. Co., 68 Fed. 82. The court held that the Iowa statute (McClain's Code, § 2008), which declares that "a judgment against any railway corporation for any injury to any person or property, shall be a lien within the county where recovered on the property of such corporation, and such lien shall be prior and superior to the lien of any mortgage or trust deed executed since the 4th day of July, A. D. 1862," did not apply to street-railroad corporations. The court said:

"It cannot be questioned, on the one hand, that a company engaged in operating street cars upon lines of rails laid down along the streets of a town or city, for the transportation of passengers, is, in one sense, a railway corporation, nor, upon the other hand, that there is a marked and recognized distinction between street-railway lines and those engaged in the general passenger and freight traffic of the country. * * * The point in dispute resolves itself into the question whether, in the legislation of the state, the terms 'railroad or railway lines,' or corporations operating railroads or railways, should be held to include street railways, when the latter class is not specifically named. The section of the Code already cited * * * forms part of chapter 5, tit. 10, McClain's Code Iowa, which includes the legislation in regard to railways. An examination of the 147 sections of this chapter shows that in none of them are street railways named, and at least 137 thereof show affirmatively, by the nature of the provisions thereof, that it was not the intent to include street railways therein; and it is therefore the fair inference that the entire chapter was intended to apply only to the other class of railways. Thus, in this chapter it is enacted that every corporation operating a railway shall, at all highway crossings, construct cattle guards, and erect signboards; must connect its line, by means of a Y, with all intersecting lines, and receive

and draw the cars of all connecting lines; must stop not less than 200 feet from any other line of railway intersected or crossed; and must give signals, by bell or whistle, beginning at least 60 rods from all highway crossings, of the approach of all trains. The application of these and similar provisions of this chapter would be practically a prohibition of the running of street cars."

After pointing out other distinctions, the court proceeds:

"So far the question has been considered as though all the provisions of chapter 5, tit. 10, McClain's Code, had been adopted at one time by the legislature, whereas, in fact, they were not, and therefore it can be properly urged that regard must be had to the act which first adopted into the legislation of the state the provisions of the section under consideration; for if it should appear from the terms of that act, as it passed the legislature, that it was intended to include street railways within its provisions, such legislative intent would not be changed or defeated because the section was subsequently codified as part of chapter 5, tit. 10."

After referring to the 11 different sections of the supplemental act (Laws Iowa 1862, c. 169), it is said:

"It is clearly apparent that, of these sections, at least nine have no application to street railways; and why, therefore, should it be held that the other two, to wit, sections 7 and 9, were intended to include street railways, when they are not named therein, and the same words, to wit, 'railroad company,' are used in these sections as are employed in the other nonapplying sections? Upon what theory can the court rightfully enlarge the meaning of the words 'railroad company,' as used in sections 7 and 9, over the plain construction applicable to these same words when used in the other sections of the statute? There is certainly nothing in the language of these sections, or in the context, that gives support to the contention that the legislature intended these sections to apply to a class of corporations not included in the other sections of the act. * * * The conclusions reached are that, as there is in fact a marked distinction between railroads used in the furtherance of the general passenger and freight traffic of the state, and those used for street purposes only, we should naturally expect to find in the legislation of the state provisions applicable to the one class which are not applicable to the other; that an examination of the statutes of the state shows that such difference is recognized therein; that chapter 5, tit. 10, McClain's Code, is intended to embrace the provisions applicable to companies engaged in the general passenger and freight traffic; that, as that is the general purpose of the chapter, the court is not justified in excepting out of it one or two sections, and holding that they include also street railways, when the latter are not specifically named therein, and there is nothing in the context of the chapter, or in the text of the original act of 1862, which shows the legislative intent to include street railways therein; that the adoption of other sections of the statute, not included in said chapter 5, which authorize the construction and operation of street railways under the control of the city or town, with special provisions in regard to right of way and liability for injuries caused to others, shows clearly that the legislature did not intend to include street railways within the provisions of chapter 5, tit. 10; and that the court cannot so include them upon the argument that the proper protection of the people requires the application of the same rule to both classes of corporations,—it being for the legislature to give force to this argument, if it deems it advisable so to do."

Having arrived at the conclusion that the statute in question is not applicable to street railroads, and this being conclusive of the case, it is unnecessary to notice any of the other objections presented by appellant. The decree of the circuit court is reversed, and the cause remanded, with instructions to dismiss the bill.