Argued September 11, decided September 23, 1913.

## OSWEGO, D. & R. RY. CO. v. COBB.

(135 Pac. 181.)

**Eminent Domain—Right of Condemnation—"Railroad"—"Railway"— "Common Carrier."**

1. Under Sections 6838, 6839, L. O. L., respectively providing that a corporation organized for the construction of any railway may appropriate so much land as may be necessary for the line of its railway, a corporation organized to construct a railroad line is entitled to condemn land, even though it is a short line carrying only

freight; for the terms "railway" and "railroad" are synonymous and mean a road or way on which rails are laid for the conveyance of heavy loads in cars, propelled by steam or other motive power, and Section 6853, L. O. L., declaring that every corporation formed for the construction of a railway shall be deemed a "common carrier" and entitled to collect and receive just compensation for the transportation of persons or property, impliedly authorizes a railroad to limit its business to carrying freight or passengers.

> [As to the uses for which the power of eminent domain cannot be exercised, see note in 102 Am. St. Rep. 809.]

#### Carriers—Common Carriers—Rights of Carriers.

2. A common carrier may legally limit its business to carrying freight or passengers, and the fact that it does not carry one class does not prevent it from being a common carrier.

#### Eminent Domain—Condemnation—Power of Railroad Company.

3. For a railroad company to avail itself of the power of eminent domain, the use to which it intends to put the property appropriated must be a public one.

#### Eminent Domain—Condemnation—Public Use.

4. A railroad organized to carry freight between a rock quarry and the terminal of another railroad is entitled to condemn land, where it carries freight for the general public as well as the quarry company, the use to which it desires to put the condemned property being a public one.

> [As to when the question of public use is a judicial question, see note in 88 Am. St. Rep. 926.]

#### Pleading—Demurrer—Effect.

5. A demurrer admits the allegations of the complaint.

#### Eminent Domain—Condemnation—Statutes—Construction.

6. While statutes providing for condemnation should be strictly construed, they should be also construed so as to effectuate the purpose for which they were enacted.

From Douglas: JAMES W. HAMILTON, Judge.

Department 1.    Statement by MR. JUSTICE RAMSEY.

This is an action by the Oswego, Dallas & Roseburg Railway Company, a corporation, against W. L. Cobb and others.    In substance the facts are as follows:

The plaintiff is a railway corporation, and it was incorporated and organized under the general incorporation laws of this state, for the purpose of constructing, owning and operating a railway line from

a point at or near the proposed limerock quarry of the Portland Cement Company, in Douglas County, Oregon, to a point of connection with the line of the Oregon & California Railway Company, near Green station in said county, with sidings, spurs, stations, depots, etc. The complaint alleges, also, that the plaintiff is proceeding to acquire by purchase and otherwise the necessary lands and right of way for the construction, operation and maintenance of a railroad for freight traffic between the points named, and that it will construct a railroad as a common carrier of *freight,* for hire upon said lands and right of way; that the plaintiff intends that said line, when completed, shall be operated and maintained in such a manner that the public generally will have the right to use and shall have the use of the same for shipping purposes, so that such railroad shall afford to all persons equal facilities for the transportation of freight upon payment of a reasonable compensation, etc.; and that the plaintiff will apply and devote the lands and rights desired and herein sought to said purposes. The complaint is in the usual form for appropriation of land for right of way purposes for a railroad, and describes a strip of land 20 feet wide that it desires to appropriate. It appears from the complaint that the plaintiff's railroad is to be operated for conveying freight as a common carrier for hire, but that it is not intended that the company shall carry passengers. The proposed road is only a few miles long.

The defendants who appealed demurred to the complaint for the alleged reason that the complaint does not state facts sufficient to constitute a cause of action against said defendants or either of them. The trial court overruled the demurrer, and the defendants did not desire to answer. The court then impaneled a jury, and the case was tried. A verdict was rendered

finding for the defendants damages aggregating only
$22. The plaintiff paid said damages into the court
for the defendants, and the court entered a proper
judgment of appropriation of the 20-foot strip de-
scribed in accordance with the prayer of the complaint.
The defendants appeal, assigning as error the over-
ruling of said demurrer and the rendition of said judg-
ment.                                                    AFFIRMED.

For appellants there was a brief and an oral argu-
ment by *Mr. Benjamin L. Eddy.*

For respondent there was a brief, with oral argu-
ments by *Mr. Reuben W. Marsters* and *Mr. Oscar
Hayter.*

MR. JUSTICE RAMSEY delivered the opinion of the
court.

This is an action for the appropriation by the plain-
tiff, a railway corporation, of a strip of land 20 feet
wide for its right of way.

The plaintiff was incorporated under the general
incorporation laws of the state, for the purpose, among
other things, of constructing, owning, operating and
maintaining a railway line on some eligible route to be
selected, starting at some convenient point at or near
the limerock quarry of the Portland Cement Company,
on its properties in sections 20 and 29, township 28
south, range 5 west of the Willamette meridian, in
Douglas County, Oregon, and running thence westerly
to a point of connection with the line of the Oregon &
California Railway Company, near Green station in
Douglas County, Oregon, with sidings, spurs, switches,
connections, stations, depots and other necessary or
convenient things for the use of its line of railway.

The complaint alleges the facts necessary to entitle
it to maintain this action if the plaintiff is a railway

within the purview of Section 6838, L. O. L., and en-
titled to appropriate lands under Section 6839, L. O.
L., for its right of way.

The plaintiff company is constructing said railroad
to be used as a common carrier of freight for hire upon
its proposed road over the lands described in the com-
plaint between its termini connecting with the Oregon
& California Railway Company's line at Green station
thereon.

The chief contention of the defendants is that, inas-
much as the plaintiff was incorporated for the purpose
of carrying freight only, it is not a railway within the
meaning of Section 6838, L. O. L., and not entitled to
maintain an action for the appropriation of land for
a right of way.

The jury found for the plaintiff, that the plaintiff
is entitled to appropriate that part of the roadway
through Glengarry Fruit Lands, sought to be con-
demned, and described in the complaint, etc., and as-
sessed the damages.   The court found that the use for
which the plaintiff sought to appropriate said strip
of land as a right of way was a public use, authorized
by law, and that said land was necessary to said use,
etc.

1, 2. The only point for decision is whether the de-
murrer to the complaint was properly overruled.   Is
the railway which the plaintiff intends to build and
operate a railway within the meaning of Section 6838,
L. O. L.?

Said section provides as follows: "A corporation
organized for the construction of *any railway,* * *
shall have a right to enter upon any land between the
termini thereof, * * for the purpose of examining,
locating, or surveying the line of such railway," etc.
Section 6839, L. O. L., provides that any corporation
mentioned in Section 6838, L. O. L., may appropriate

so much land as may be necessary for the line of its railway, etc. As Section 6838, L. O. L., applies to any corporation "organized for the construction of *any railway,*" the material question for consideration is whether the plaintiff company was organized "for the construction of a railway." If the road contemplated by the plaintiff would be a railway when constructed and in operation, then the plaintiff has the right to appropriate the land for a right of way. Section 6838, L. O. L., applies to corporations organized "for the construction of *any railway.*" The terms "railway" and "railroad" are synonymous, and mean a road or way on which iron or steel rails are laid for wheels to run on, for the conveyance of heavy loads in cars or carriages, propelled by steam or other motive power: Black's Law Dictionary (2 ed.), p. 989.

It was held by this court in *Thompson-Houston Company* v. *Simon,* 20 Or. 60 (25 Pac. 147, 23 Am. St. Rep. 86, 10 L. R. A. 251), that a street railway propelled by electricity or horse-power was not a railway within the purview of Section 6838, *supra,* and that it could not maintain an action for the appropriation of land for a right of way. But in that case Mr. Justice LORD seems to have based the decision on the fact that he thought the legislature in passing the sections referred to, *supra,* did not intend to include street railways, because the statute confers power upon the corporations intended by said sections to appropriate lands for workshops, sidetracks, depots, water stations and embankments and authorizes such corporations, also, to cut down standing timber in danger of falling on their roads, and to unite with other railways, and to make turnouts, sidings, and switches, and provided that all streams and other waters on the line of such roads should be safely and securely bridged. After referring to these provisions, Mr. Justice LORD says:

"Few, if any, of these provisions have any reference to the class of corporations to which the plaintiff belongs. * * They contemplate and authorize a railway to be constructed where none was built before through the country, requiring bridges, cuttings, fillings, and embankments, and sometimes tunnels through hills and mountains, and also the building of depots and stations for the accommodation of freight and passengers, of engine-houses, repair-shops," etc. He then concludes that said sections were not intended to apply to street railways. Elsewhere in his opinion, he says: "A common carrier, then, may be either a carrier of passengers or freight, or both. The argument, then, that the plaintiff is not the kind of corporation authorized to exercise the power of eminent domain because it is only a carrier of passengers and not of freight, would not deprive the plaintiff of its character as a common carrier, and as such be deemed within the statute. This would result in giving to the statute a construction which would include both classes of carriers, but not necessarily that such carriers should combine both employments; it might be engaged in carrying passengers or freight, or both, and still be deemed a common carrier." The facts of this case, however, differ materially from the facts in the case decided by Mr. Justice Lord.

In *Funk* v. *St. Paul City R. Co.*, 61 Minn. 435 (63 N. W. 1099, 52 Am. St. Rep. 608, 29 L. R. A. 208), the Supreme Court of Minnesota held that a street railway was not a railroad within the purview of an act of the legislature providing that every railroad corporation owning and operating a railroad in that state should be liable for damages sustained by a servant by reason of the negligence of any other servant.

A common carrier may legally limit its business to carrying freight, or it may carry both freight and pas-

66 Or.—38

sengers.    Section 6853, L. O. L., is as follows: "Every
corporation formed under this act for the construction
of a railway as to such road shall be deemed common
carriers, and shall be entitled to collect and receive a
just compensation for transportation of persons *or*
property over such road," etc.: *Thompson-Houston
Co.* v. *Simon,* 20 Or. 60 (25 Pac. 147, 23 Am. St. Rep.
86, 10 L. R. A. 251); *Wiggins Ferry Co.* v. *East St.
Louis W. R. Ry. Co.,* 107 Ill. 457, 458; 1 Hutchinson,
Carriers (3 ed.), §§ 47, 93.    In *Wiggins Ferry Co.* v.
*East St. Louis W. R. Ry. Co.,* 107 Ill. 457, the court
says:

"The argument is that the legislature, in providing
a general law on the subject, must have intended to
include only such companies as would perform the
ordinary functions of common carriers, and as the
company in question does not propose to receive ship-
ments of freight generally, *or carry passengers at all,*
it is contended the appellee is not, within the meaning
of the act, a railway company, and hence its supposed
organization was unauthorized, and all acts done under
it are illegal and void.    The proposed business of this
company is clearly such as is usually, if not uniformly,
done by railway companies, and we are aware of no
rule of law requiring a railway track to be of any par-
ticular length, or that it should extend beyond the
limits of a particular town or city, though most rail-
roads certainly do.    Nor do we see anything in the
objection that the business of the company is to be
limited to the carrying of freight offered in cars only.
Every common carrier has the right to determine what
particular line of business he will follow.    If he elects
to carry freight only, he will be under no obligation to
carry passengers, and *vice versa.*    So if he holds him-
self out as a carrier of a particular kind of freight,
or of freight generally, prepared for carriage in a par-
ticular way, he will only be bound to carry to the extent

and in the manner proposed.  He will nevertheless be a common carrier.''

The court held in that case that the company was legally organized as a railway company, although it did not carry passengers, and carried freight only in cars.

We find no merit in the objection that the plaintiff is to be a common carrier of freight only.

3. In order that a railway company may avail itself of the power of eminent domain, the use to which it intends to put the property which it seeks to appropriate must be a public one.

4. In *Ulmer* v. *Railway Co.*, 98 Me. 587 (57 Atl. 1004, 66 L. R. A. 387), the court says on this point:

''The tests decisive of this question, as to whether a branch track of this character is to be constructed and operated for public or private purposes, deducible from the great weight of authority upon the question in this county, are these: If the track is to be open to the public, to be used upon equal terms by all who may at any time have occasion to use it, so that all persons who have occasion to do so can demand that they be served without discrimination, not merely by permission but as of right, and if the track is subject to government control, under general laws, as on the main lines of a railroad, then the use is a public one and the legislature may grant the power to exercise the right of eminent domain to a corporation which is to construct and operate such track; and, if the purpose of the railroad corporation in building any such branch track is to operate the same in conformity with these requirements, then the power granted by the legislature may be exercised in that particular case.''

In *De Camp* v. *Hibernia Ry. Co.*, 47 N. J. Law, 47, the court says:

''This enterprise does not lose the character of a public use because of the fact that the projected rail-

road is not a thoroughfare, and that its use may be
limited by circumstances to a comparatively small part
of the public.    Every one of the public having occasion
to send materials, implements or machinery for mining
purposes into or to obtain ores from the several min-
ing tracks adjacent to the location of the road, may use
this railroad for that purpose, and of right may re-
quire the company to serve him in that respect; and
that is the test which determines whether the use is
public.    Nor will any motive of personal gain which
may have influenced the projectors in undertaking the
work take from it its public character."

The proposed railroad, under consideration in that
case, was only two thirds of a mile in length, and *it was
wholly underground.* It was organized to carry freight
for hire, but not passengers, and it was seeking to ap-
propriate property under the power of eminent domain,
and the court held that it could do so.    In passing on
said case, the court said also: "Companies organized
under the laws of 1879 are organized only for trans-
portation of minerals, implements, and machinery used
in the sinking and working of mines, and the tolls au-
thorized to be charged are the tolls for such transporta-
tion; *but a carrier of freight is engaged in a public em-
ployment as much as a carrier of passengers.*"

15 Cyc., page 581, says, concerning a public use:

"Under certain general principles, however, upon
which the decisions are based, the term 'public use' is
usually intended to cover a use affecting the public in
general or any number thereof, as distinguished from
particular individuals.    If the special benefit to be de-
rived from the lands sought to be appropriated is
wholly for private persons, the use is a private one,
and not made public by the fact that the public has a
theoretical right to use it, or that the public will re-
ceive an incidental or prospective benefit therefrom.
And, on the other hand, if the use is in fact a public

one, its character is not changed by the fact that the control of the property sought to be taken will be vested in private persons or a private corporation who are actuated solely by motives of private gain, and that private purposes will be thereby incidentally served."

In *Kettle River C. Co.* v. *Eastern R. Co.,* 41 Minn. 470, 471 (43 N. W. 473, 6 L. R. A. 111), the court says:

"But these corporations are each *quasi*-public corporations, and are, under their charters, authorized to exercise the right of eminent domain; and the question whether the use is public or private does not depend upon the amount of business, or the number of persons who have occasion to use either road, but upon the right of the public to require the corporations to carry their freight. * * If all the people have a right to use the road, it is a public use or interest, though the number who have business requiring its use may be small."

In the case of *Bridal Veil Lum. Co.* v. *Johnson,* 30 Or. 210 (46 Pac. 791, 60 Am. St. Rep. 818, 34 L. R. A. 368), discussing what is a public use of a railroad, the court says:

"And it can make no difference that its use may be limited by circumstances to a small part of the community. Its character is determined by the right of the public to use it, and not by the extent to which that right is exercised."

The complaint alleges *inter alia,* in substance, that it is now proceeding to and will construct a railroad as a common carrier of freight for hire upon the lands described in the complaint, and that the plaintiff owns lands for loading grounds, and depot purposes, for shipment of freight by the general public over the line of said railroad, and that the plaintiff intends, in good faith, to and will complete the said line of railway between said loading grounds and shipment points and

the line of said Oregon & California Railway Company at or near Green station, thereon, and intends to and will cause the same, when completed, to be operated and maintained in such a manner, that the public generally shall have the right to use and shall have the use of the same for shipping purposes, and so that said railroad shall afford to all persons equal facilities for the transportation of freight upon payment of a reasonable compensation therefor, and that the plaintiffs will apply and devote the lands and rights desired and herein sought to be appropriated to such uses and purposes.

The foregoing statements from the complaint show for what purposes said right of way is sought and will be used, and they show that said railway is to be a common carrier of freight, and that the public generally will have the right to transport freight over said road for reasonable freight charges, and that all persons are to have equal facilities for shipment thereon.

5. The demurrer admits the allegations of the complaint.

6. While statutes providing for the exercise of the power of eminent domain are construed strictly, such construction will be given to them as will effectuate the purposes for which they were enacted, and give effect to all the provisions of the law: 1 Lewis, Eminent Domain (3 ed.), § 338.

The complaint shows that the plaintiff is a corporation organized for the construction of a railway within the meaning of Sections 6838, 6839, L. O. L., and it states facts sufficient to constitute a cause of action for the appropriation of the land demanded for a right of way, and described in the complaint.

The demurrer to the complaint was properly overruled.

We find no error in the proceedings of the court below, and the judgment is affirmed.          AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.